The Toledo, Wabash and Western Railway Co.

*v.*

Henry F. Elliott *et al.*

1. Contract—*to pay back a rebate on freight.* Where the plaintiff, having sold a large lot of corn, to be delivered in Boston at a certain price, the purchaser agreeing to advance the regular freight, which was 80½ cents per hundred pounds, as a part of the price, made a special contract with a railroad company to allow him a rebate of 5½ cents per hundred, which the company was to pay him, and the corn was shipped, a part at 80½ cents, as agreed, and on which the company paid the plaintiff back 5½ cents per hundred, and a part was billed through at 75 cents per hundred, without the shipper's consent: *Held,* that the company was liable to the shipper for 5½ cents per hundred on the latter portion of the corn.

2. Same—*legality.* Such a contract is not illegal, as being in violation of the law to prevent unjust discriminations, as the company was to carry at the customary rates. The rebate in the charges was a matter of private agreement between the carrier and the shipper, and the contract was not fraudulent as to the purchaser of the corn.

3. Agency—*ratification of agent's contract.* Where a local agent of a railroad company was authorized to make a special contract for transporting a lot of corn from this State to Boston, even if the agent transcended his authority and made a contract to return a part of the freight charged, yet if the company availed itself of the benefit of such contract, it was *held,* that it ought not to be allowed afterwards to repudiate the agreement on the ground its agent had no authority to make it.

4. New trial—*finding of court.* Where the evidence is conflicting, and nearly balanced, the finding of the court below upon the facts will be regarded the same as the verdict of a jury, and will not be disturbed.

Appeal from the Circuit Court of Logan county; the Hon. Lyman Lacey, Judge, presiding.

This was an action of assumpsit, by Henry F. Elliott, James Congdon and Eugene Burnell, partners, doing business under the name and style of Elliott, Congdon & Co., against the Toledo, Wabash and Western Railway Company, to recover back a rebate of five and a half cents per hundred pounds on a lot of corn shipped to Boston on defendant's

road, under a special agreement to that effect. The facts of the case are stated in the opinion.

Mr. G. B. Burnett, for the appellant.

Messrs. Beason & Blinn, for the appellees.

Mr. Justice Scott delivered the opinion of the Court:

In February, 1872, plaintiffs had on hand a large amount of corn, which they were desirous of selling. They effected a sale in the Eastern market, at a certain price, upon the basis of a tariff of freights, to "Boston and Boston points," at the rate of 80½ cents per one hundred pounds, which the proof shows was then the regular rate or charge. By the terms of the contract with the shippers, the consignees were to pay the charges on the corn as a part of the contract price, the rate being made known to them, and was as previously agreed upon with defendant, viz: 80½ cents per one hundred pounds.

Plaintiffs testified they made the sale upon a small margin, expecting to get a rebate or drawback on the rates, by which they would have realized a profit. Under a special contract, the railroad carried a large amount of corn for plaintiffs. The controversy in the case is as to the terms on which the company was to freight the corn. Plaintiffs claim it was to be carried at 80½ cents per one hundred pounds, and the company, by special agreement, was to allow them a drawback or rebate on the charges, to the amount of 5½ cents. On the other hand, the company contend the contract was to carry the corn at a reduced rate, viz : 75 cents per one hundred pounds.

As to the terms of the shipping contract, the evidence is quite conflicting; but there are some facts that appear to strengthen plaintiffs' theory of the case. They had sold the corn at a certain price, on the definite agreement the consignees would pay the usual charges, viz : 80½ cents. It was

obviously no interest to them to negotiate for a reduction of rates, if they were to receive no benefit therefrom. A significant fact in the case is, the corn was, in fact, billed at 80½ cents at Lincoln, but the rates were changed at Toledo without the knowledge or consent of the shippers. Some of the cars so billed went through without change of rates, upon which the consignees paid the charges at the rates agreed upon in advance. As to these cars, the company allowed plaintiffs a drawback of 5¼ cents, which has been paid. Upon the whole evidence the court below, before whom the cause was tried without the intervention of a jury, found the company contracted to allow plaintiffs a drawback of 5½ cents; and we are not prepared to say it found incorrectly. Were it a question of first impression with us, we might reach the same conclusion ; but regarding the finding of the court as we would the verdict of a jury, we perceive no reason for disturbing it.

The question of the most difficulty in the case is, whether the local agent of the company had authority to make the contract insisted upon. Upon this question the evidence is as conflicting as upon any point in the case. Weed was the local agent of defendant, with whom the contract was negotiated. He wrote, as he says, to the general freight agent for authority to make a special contract as to rates on plaintiffs' corn. According to his testimony, he reported to Congdon he had authority to contract for a reduced rate, viz: 75 cents per one hundred pounds, to the points indicated. But Congdon says he told him then, distinctly, he did not want reduced rates—he wanted a drawback, to be paid to his firm when the shipments of corn were made. Weed returned again, and Congdon s testimony is to the effect Weed then told him he had authority to make an arrangement by which the company would allow plaintiffs a rebate of 5¼ cents. Weed, however, denies the statements of Congdon in this particular.

Whatever Weed's instructions were, they were contained in a letter from the general freight agent. That letter, he says, was returned as soon as the contract was closed. It was not produced on the trial.

The explanation Weed gives of the fact the grain was billed, when shipped, at 80½ cents is, defendant had a contract with the Chicago and Alton Railroad Company to maintain the rates at 80½ cents from Lincoln to "Boston and Boston points," and the company did not want any evidence in his office of the violation of the agreement. It was for that reason, he says, he returned his letter of instruction.

There was certainly an apparent authority in the local agent to contract for carrying the grain under some special arrangement. It seems quite certain, from all the evidence, the corn was shipped over defendant's road on the agreement the company would allow plaintiffs a rebate on the usual charges ; and, having availed of the benefits of the contract, the company ought not now to be permitted to repudiate it on the ground their agent had no authority to make it.

There is nothing in the point insisted upon, that plaintiffs were endeavoring to defraud the consignees, and the contract, if made, was therefore unlawful. The consignees had agreed to pay so much for the corn, with the rates at 80½ cents. Had the usual rates been lower, we may presume the shippers would have been able to obtain a larger price. There was no fraud intended, nor none, in fact, in the transaction, so far as we can see.

We do not understand the contract is at all in violation of the statute to prevent unjust discriminations in charges by railroad carriers. The contract was to carry the grain at the customary rates. The rebate in the charges was a matter of private agreement between the carrier and the shipper.

The judgment must be affirmed.

*Judgment affirmed.*