250        I., D. & S. R. R. Co. *v.* ERVIN.

INDIANAPOLIS, DECATUR AND SPRINGFIELD RAILROAD COMPANY

*v.*

RICE ERVIN.

*Filed at Springfield October 6, 1886.*

1. RAILROADS—*unjust discrimination in freight charges—of a contract for a rebate.* A contract between a railroad company and a shipper, that the latter shall pay the regular and established rates of freight, the same as all other shippers, and that the company shall pay back to him, by way of rebate, a certain portion of the freight so charged and paid, whereby such shipper will pay a less rate for transportation than that paid by others, and the public generally, for like services, under similar circumstances and for like distances, is void, as being against public policy at the common law, and in violation of the statute against unjust discriminations.

2. SAME—*former decision—on the same subject.* The case of *Toledo, Wabash and Western Railway Co.* v. *Elliott,* 76 Ill. 67, holding that a contract for a rebate of freight paid to a railway company was not in violation of the statute against unjust discrimination, was made under a different statute from the present one. That case was under the act of 1871, which provided only against unjust discriminations between places, and not between individuals, as does the act of 1873. That case, and the case of *Erie and Pacific Dispatch* v. *Cecil,* 112 Ill. 185, under the present statute, are not authority.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Douglas county; the Hon. J. W. WILKIN, Judge, presiding.

Mr. JAMES A. EADS, for the plaintiff in error:

The public policy of this State upon the question of railroad transportation is, that the rates shall be reasonable, and open to all shippers upon the same terms for similar services under the same circumstances,—in other words, that there shall be no favored shippers and no unjust discrimination. To this the records of the executive, legislative and judicial departments bear ample witness. We claim these contracts are in violation of this public policy. If so, they are void,

and the courts will not enforce them. *Neustadt* v. *Hall,* 58 Ill. 172; *Jerome* v. *Biglow,* 66 id. 452; *Craft* v. *McConoughy,* 79 id. 346.

We also insist that these contracts are void at common law. *Messenger* v. *Railroad Co.* 36 N. J. 407, affirmed in 8 Vroom, 531; 2 Rorer on Railroads, 935-938, 1223-1230; *New England Ex. Co.* v. *Railroad Co.* 57 Maine, 188; *Sandford* v. *Railroad Co.* 24 Pa. 378; *Railroad Co.* v. *People,* 67 Ill. 16.

If a part of the consideration is illegal, the whole contract is void. *Henderson* v. *Palmer,* 71 Ill. 579; *Tenny* v. *Foote,* 95 id. 99; *Railroad Co.* v. *Mather,* 104 id. 257.

We submit that these contracts are in violation of the constitution and statutes of the State. Const. of Illinois, art. 11, sec. 15; Railroad and Warehouse Commissioners' act, secs. 110-114.

Courts will not enforce contracts prohibited by law. *Penn* v. *Bornman,* 102 Ill. 523; *Banking Co.* v. *Rautenberg,* 103 id. 464.

The rule is now well established that no agreement to do an act forbidden by a statute, or to omit to do an act enjoined by a statute, is binding. 7 Wait's Actions and Defences, 64.

Although the statute may not say the contract is void, yet it is void if in violation of the statute. 1 Parsons on Contracts, 382; 2 id. 186.

At common law a common carrier is not allowed to exercise any unjust or injurious discrimination between individuals in their rates of tolls. *Railroad Co.* v. *People,* 67 Ill. 16; *People* v. *Railroad Co.* 55 id. 111; *Vincent* v. *Railroad Co.* 49 id. 33; *Railroad Co.* v. *Parkes,* 18 id. 464; *Railroad Co.* v. *Coal Co.* 79 id. 121; *Railroad Co.* v. *People,* 56 id. 383.

Mr. C. C. CLARK, and Messrs. NELSON & HARNSBERGER, for the defendant in error.

Mr. Justice Sheldon delivered the opinion of the Court:

This action was brought by Rice Ervin and John Ervin, against the Indianapolis, Decatur and Springfield Railway Company, to recover for certain rebates claimed to be due them on certain contracts for the shipment of grain over the defendant's railroad, from Tuscola, Illinois, during the years 1879, 1880 and 1881. The general issue, and a special plea setting out these contracts were filed by the railway company. A demurrer was sustained to the special plea. On the trial of the case in the court below, the defendant offered to prove, under the general issue, that at and before the time of making the contracts sued on, defendant had established a schedule of reasonable rates and tolls for the transportation of grain and other property over its railroad, in accordance with the schedule of rates that had been prepared for it by the Railroad and Warehouse Commissioners of the State of Illinois; that plaintiffs resided at Tuscola, Illinois, and were engaged in buying grain and shipping it over defendant's railroad, and that plaintiffs and the general freight agent of the defendant entered into a secret agreement that the grain and other property of plaintiffs to be shipped over the railroad should be billed out and charged at the regular schedule rates, and that the same should be paid by plaintiffs the same as was charged to and paid by the public generally for similar services, under similar circumstances and for like distances, and that the company should pay back to plaintiffs, by way of rebate, a portion of the freight so charged and paid, from two to eight cents per hundred pounds on all grain shipped by them over the road, giving to plaintiffs a less rate for transportation than was given to the public generally for like services, under similar circumstances, and for like distances; that the rates so given to plaintiffs were private and not open to the public generally, and less than were charged to the public generally, less than the schedule rates, and than any

other shipper had, except Davis & Finney; that plaintiffs and Davis & Finney did the bulk of the grain business on the railroad; that no other grain shippers had such special rates, and could not compete with plaintiffs. This evidence was all excluded by the court, and exception taken. The special plea sets out substantially the same facts, with the addition that the president of the company had instructed the freight agent not to allow plaintiffs less than the regular rates, of which plaintiffs had notice, and that they had notice of the regular schedule rates. Judgment went for the plaintiffs for $6711.73, after the overruling of a motion for a new trial, and was affirmed by the Appellate Court for the Third District. Defendant sued out this writ of error.

It is insisted the contracts, as set out in the special plea, and offered to be proved at the trial, are void, as in violation of the statute of the State against extortion and any unjust discrimination by railroad companies in freight and passenger rates, and as against public policy. This question, as respects the statute above named, then in force, was presented before this court in *Toledo, Wabash and Western Railway Co.* v. *Elliott,* 76 Ill. 67, where a contract for such a rebate was held not to be in violation of the statute to prevent unjust discrimination in charges by railroad carriers. This ruling was followed and affirmed in *Erie and Pacific Despatch* v. *Cecil,* 112 id. 185.

It is contended by appellee's counsel that these cases should control the present decision. The statute under which the Elliott decision was made, was different from the present statute which applies here. The contract in the *Elliott case* was made in February, 1872, and the statute which applied there was the act which went in force July 1, 1871, entitled "An act to prevent unjust discriminations and extortions in the rates to be charged by the different railroads in this State for the transportation of freight on said roads." (Laws 1871–72, p. 635.) That act provided only against unjust

discrimination between places, and not between individual
shippers, so that it was well said in the *Elliott case*: "We
do not understand the contract is at all in violation of the
statute to prevent unjust discrimination in charges by rail-
road carriers." But a subsequent statute, approved May 2,
1873, which went in force July 1, 1873, (Rev. Stat. 1874,
p. 816,) and is the one applying to this case, provides against
unjust discrimination between individual shippers, as well as
between places. The second section of the act provides, in
general terms: "If any railroad corporation in this State shall
make any unjust discrimination in its rates or charges of toll
for the transportation of passengers or freight upon its road,
it shall be deemed guilty of having violated the provisions of
the act, and be subject to its penalties." Section 3, after
speaking as to discrimination between places, provides fur-
ther: "Or if it (railroad corporation) shall charge, collect or
receive from any person or persons, for the transportation of
any freight upon its railroad, a higher or greater rate of toll or
compensation than it shall at the same time charge, collect
or receive from any other person or persons for the transpor-
tation of the like quantity of freight of the same class, being
transported from the same point, in the same direction, over
equal distances of the same railroad, or if it shall charge, col-
lect or receive from any person or persons a higher or greater
amount of toll or compensation than it shall at the same
time charge, collect or receive from any other person or per-
sons for receiving, handling or delivering freight of the same
class and like quantity at the same point upon its railroad,"
or shall make the like discrimination between persons for the
use and transportation of any railroad car, "all such dis-
criminating rates, charges, collections or receipts, whether
made directly, or by means of any rebate, drawback, or other
shift or evasion, shall be deemed and taken, against such rail-
road corporation, as *prima facie* evidence of the unjust dis-
criminations prohibited by the provisions of this act. * * *

This section shall not be construed so as to exclude other evidence tending to show any unjust discrimination in freight and passenger rates." The fourth section provides, that any such railroad corporation guilty of making any unjust discrimination as to passenger or freight rates, or the rates for the use and transportation of railroad cars, or in receiving, handling or delivering freights, shall, upon conviction thereof, be fined in any sum not less than $1000, or more than $5000, for the first offence, and in increased sums for subsequent offences.

The aim of this statute is against favoritism,—against charging one shipper more than another for the like service, under like conditions. The statute regards this as unjust discrimination, and denounces and punishes it as such. Unjust discrimination by common carriers was not sanctioned by the common law. In the case of *Chicago and Alton Railroad Co.* v. *The People*, 67 Ill. 16, this court say: "The duties and liabilities of a common carrier are clearly defined by the common law, and have been so defined for centuries. * * * Another well settled rule of the common law in regard to common carriers is, that they shall not exercise any unjust or injurious discrimination between individuals in their rates of tolls." In *Messenger et al.* v. *Pennsylvania Railroad Co.* 36 N. J. Law, 407, it was decided that an agreement by a railroad company to carry goods for certain persons at a cheaper rate than they will carry, under the same conditions, for others, was void, as creating an illegal preference. The plaintiffs in that case had made shipments at the regular rates, under an agreement that they should be allowed such drawbacks as would bring their freights twenty and ten cents per hundred lower than the lowest rate given to any other person. The suit was to recover such drawbacks. The contract was held, upon the principles of the common law, to be illegal, and on that ground a demurrer to the declaration was sustained. Whenever the contract which the party seeks to

enforce, be it express or implied, is expressly or by implication forbidden by the common or statute law, no court, either of law or equity, will lend its assistance to give it effect. (2 Chitty on Contracts, 971.) This is the well settled rule of law.

The evidence offered and excluded, tended, in our opinion, to make a case of unjust discrimination, under this statute of 1873,—to prove a contract to give the plaintiffs an undue preference over others, in charging them lower rates on their shipments. Such a contract appears to us to be one in contravention of this statute. As the matter stands, plaintiffs have paid the regular rates, and have been treated alike with other shippers not having had any undue advantage. To enforce such a contract as above, and adjudge defendant to pay the rebates claimed, would be to compel defendant to make an unjust discrimination in favor of plaintiffs, and require the company to do what the statute forbids their doing. Such a result the law will not aid in accomplishing. In the *Cecil case*, the contract was made in 1881, and was one for a rebate on a single shipment of corn. The principal questions there controverted and discussed, were as to the making of the contract and the authority of the agent. There was no discussion of the validity of the contract. There was merely an extract from the opinion in the *Elliott case*, and then this observation: "What was there said is equally applicable here, and under the authority of that case we must hold the agreement in this, valid and binding." It was mistakenly remarked, that what was said in the *Elliott case* was equally applicable in the *Cecil case*. The contract in the former case was made when the statute of 1871 was in existence, and the decision there was with reference to that statute. The contract in the *Cecil case* was made while the statute of 1873 was in force. But the difference between the two statutes was not brought to the attention of the court, and it was supposed the same statute was involved in both cases, so that the

*Cecil case* really affirmed nothing more in this regard than that the decision in the *Elliott case,* with reference to the statute of 1871, was correct. Neither of those cases, therefore, should control the present one.

We are of opinion the circuit court erred in sustaining the demurrer to the special plea, and in excluding the offered evidence.

The judgments of the Appellate and circuit courts will be reversed, and the cause remanded to the circuit court.

*Judgment reversed.*