## BAYLES V. KANSAS PAC. R'Y CO.

1. FREIGHT CHARGES — WHAT DOES NOT CONSTITUTE AN UNREASONABLE DISCRIMINATION.— Under section 6, article 15, of the constitution, forbidding "undue or unreasonable discrimination" by railroad companies in freight charges, a contract to carry freight for a party at a specific rate, being less than its published schedule, is not void as being an unjust discrimination and against public policy, in the absence of evidence that such special rate is an exclusive privilege.

2. SAME — REQUIREMENTS OF THE LAW.— Freight charges must in all cases be reasonable to shippers, and when the circumstances and conditions are the same they must likewise be equal.

3. WHAT IS PROHIBITED.— The fundamental law prohibits the granting of privileges to one shipper, tending to give him a monopoly to the prejudice of others engaged in like pursuits. Contracts creating such privileges are against public policy and void.

4. REBATES OR DRAWBACKS NOT NECESSARILY DISCRIMINATIONS.— A railroad company may contract to refund to a shipper a certain portion of the schedule rates as "rebates" or "drawbacks," and when made without reference to the rates charged other shippers such contract makes no discrimination between parties.

5. POWER OF RECEIVER TO CONTRACT — COMPLAINT — DEMURRER.— Where it is alleged in a complaint that the business of a railroad company was controlled and managed by a receiver at the time a contract was entered into with the plaintiff, a contention on demurrer to the complaint that the receiver had no power to make the contract is without merit, the want of authority not appearing. It cannot be assumed that the contract was made in violation of his authority until his authority in the premises is shown.

*Appeal from Superior Court of Denver.*

Messrs. BROWNE & PUTNAM, for appellant.

Messrs. TELLER & ORAHOOD, for appellee.

PATTISON, C. .The question presented for consideration in this case arises upon the judgment of the court below sustaining a demurrer to the complaint.

The grounds of demurrer were, in substance, (1) that the complaint did not state facts sufficient to constitute a cause of action; (2) that the contract sought to be enforced was void as against public policy; (3) that there was a defect of parties defendant.

To discuss the case intelligently a careful analysis of the contract and the allegations of the complaint is necessary.

The contract is set out *in hæc verba,* and is as follows: "This agreement, made this 20th day of March, A. D. 1878, by and between B. H. Bayles, of Denver, Colorado, party of the first part, and S. R. Ainsley, general agent of and representing the Kansas Pacific Railway Co., party of the second part, witnesseth, that the said party of the first part hereby agrees to ship all merchandise bought by him, and shipped from eastern cities, by the Kansas Pacific Railway Co., in consideration of which the said party, on behalf of and representing the Kansas Pacific Railway Co., agrees to transport all merchandise consigned to said party of the first part from (1) New York to Denver, Colorado, $1 per hundred pounds, regardless of classification; (2) Chicago, Ill., to Denver, Colo., $110 per car-load, and eighty cents per hundred pounds on less than car-load shipments; (3) St. Louis, Missouri, to Denver, Colo., eighty cents per hundred pounds on less than car-load shipments, and $110 per car-load lots; (4) Kansas City, Mo., and Leavenworth, Kan. (proper), $90 per car-load, and sixty cents per hundred pounds on less than car-load shipments.

"It is agreed that the above rates shall be and remain in force until January 1, 1889. And it is further agreed that the said party of the second part shall rectify and correct all overcharges, and protect the said party of the first part in the above-named rates, in Denver, Colo. And it is further agreed that when merchandise shipped to the care of the Kansas Pacific Railway Co. shall be diverted to other roads, and be delivered by other than the Kansas Pacific Railway Co., it shall in no way work a forfeiture of this contract. (Signed) B. H. BAYLES. S. R. AINSLEY, Agt. K. P. R'y."

It is then alleged that prior to the date of said contract, by order and decree of the circuit court of the United States for the district of Kansas, in a certain suit wherein John A. Stewart and others were plaintiffs, and the Kansas Pacific Railway Company was defendant, one S. T. Smith had been appointed and had duly qualified as receiver, and had taken possession of the said railway for its entire length, from Kansas City, Mo., to the city of Denver, and from that time until June 14, 1879, had managed said railway, and that all transportation of freight was contracted for and controlled by him as such receiver.

This allegation is followed by the statement that S. R. Ainsley, at the time the contract was made, and during all of his term of office, was the general agent of the said receiver at the city of Denver, and authorized to execute, on his behalf, agreements for the transportation of freight, including the contract above set forth; that by mutual mistake in the form of the agreement the contract was executed by said Ainsley as representative of the said railway company, rather than said receiver.

It is then alleged that the contract was adopted, and partially performed, by the said receiver, and that freight of plaintiff was transported under such contract by him, through his agents and employees, and all money paid by plaintiff was received by his agents, and used by him in

the management of said railway, and accounted for by him upon his final discharge.

It is then stated that the railway remained in the possession and under the control of the receiver until June 4, 1879, when the circuit court decreed that it should be delivered to and retained by the railway company, which order was complied with by the receiver, who, on the 14th day of the same month, turned over to the railway company all moneys in his hands, amounting to the sum of $265,791.20, and took a receipt therefor, by which it was stipulated and agreed by the railway company that "any other claims against the receiver should be assumed and paid by the said railway company," which said adjustment was afterwards approved by a final decree, rendered October 17, 1884.

It is then stated that at the time the money was so paid to defendant by the receiver the indebtedness sought to be recovered in this action was a valid claim against the receiver, and one of the debts which the railway company assumed and agreed to pay.

It is then alleged that under the provisions of the contract, plaintiff, in performance thereof, shipped all merchandise bought by him in eastern cities over the Kansas Pacific Railway to Denver, and that the total freight on such merchandise aggregated the sum of $10,619.69, which sum he from time to time paid to the agents of the receiver in full; that under the contract he was entitled to a rebate on the amounts paid for freight in the sum of $2,565.91; that of that sum the agent of the receiver, with his full knowledge and consent, paid to the plaintiff at various times, and in different amounts, the sum of $1,353.53, leaving a balance still unpaid on March 3, 1879, of $1,211.39; that the railway company refused to pay the balance remaining unpaid; that plaintiff paid the full freight rates on merchandise shipped by him as aforesaid, and by the terms of the contract was entitled to a return of said sum of $2,565.91, "which sum was the

aggregate of overcharges made by said receiver thereon in consequence of some running arrangement between the said receiver and certain other connecting lines, the nature of which is wholly unknown to plaintiff, and cannot therefore be stated."

The second cause of action need not be stated.

Judgment is prayed for the reformation of the contract, so that the same shall conform in its execution to the real intention of the parties, and for the sum of $1,211.39 upon the first cause of action, and for the sum of $2,000 upon the second cause of action, and for costs.

The demurrer was sustained upon the sole ground that the contract sought to be enforced was void as against public policy.

The court in effect held that, under the contract, the plaintiff secured rates for the transportation of merchandise which were less than the published schedule rates of defendant; that such charges amounted to an unjust discrimination within the meaning of the law and the constitution of this state, of which the court could take cognizance upon demurrer, without proof of any of the facts, circumstances, conditions or surroundings under which the contract was made, and which may have existed while the same was being performed by the plaintiff. This decision, and the principles which are invoked to sustain it, will now be discussed.

The naked facts of the case are simply that upon the day named a contract was made, by the terms of which plaintiff, for a certain period, was to have a special rate upon the merchandise purchased by him in eastern cities, in consideration of his undertaking to consign such merchandise from Kansas City via Kansas Pacific Railway. This rate applied only to shipments made at the eastern terminus of the railway, or which were shipped from eastern cities consigned to appellee. Whether the rate was either different or less than that given to other shippers residing in Denver, under like conditions and under the same circumstances, does not appear.

It does not appear, either directly or indirectly, that the special rate given to plaintiff was an exclusive privilege enjoyed by him alone. There is nothing to warrant the inference that any shipper residing in Denver could not have secured the same rate upon property which was to be shipped by him from eastern cities. There is nothing in the complaint showing that any shipper, whether he desired to ship much or little, might not have secured the same rate upon application to appellee. Neither is there anything to warrant the assumption that the arrangement was a secret one. Neither is there any reason for the inference that it was the intention of the railway company to give to appellant a preference. There was no promise not to give the same rate to others. The railway company remained at liberty to charge others the same or lower rates.

Upon all the facts, therefore, if effect be given not only to the language of the contract itself, but to every allegation of the complaint, it is clear that the purpose of the contract was to give appellant a special rate, and nothing more. This contract was performed by him, and partially performed by the railway company. The ultimate conclusion to be drawn from the entire record is that appellant secured a rate which was less than the regular schedule rates in force at the time; that there was some inequality in charges made by the appellee, but nothing to show that such inequality in charges was practiced towards those who shipped property under like circumstances and conditions.

Do these facts, standing alone, warrant the conclusion that, within the meaning of the law and of the constitution, an unjust discrimination was intended, which rendered the contract void as against public policy?

It is a well-settled elementary principle of the law of common carriers that mere inequality in charges does not amount to unjust discrimination. The requirement of the law is that the charge made shall be reasonable. A claim against a common carrier cannot be predicated

upon the bare fact that the amount paid by one is greater than the amount paid by another. At common law the question is whether, under all the circumstances, the charge is reasonable. Complete uniformity in charges is not obligatory. This principle prevails in all states, except where it has been modified by legislative enactment. In the administration of the law the principle itself has never been modified, but the courts have declared in many cases that there must be no unjust discrimination. This, too, has come to be an elementary principle. Charges, therefore, must not only be reasonable, but equal, when the circumstances and conditions are the same. Privileges tending to give a shipper a monopoly, which may injuriously affect those engaged in like pursuit, are declared to be unjust. Contracts which tend to create such preferences are held to be void as against public policy.

These principles of the common law remain in full force in practically every state. In this state they are made a part of the organic law, from which neither the courts nor the legislature can depart.

Attention is here called to a few of the authorities bearing upon these principles. "Railroad companies may lawfully make contracts to refund to a shipper a certain portion of the stipulated or established freight, by the name of 'drawbacks' or 'rebates;' but an agreement not to allow the same drawback to others is against public policy and void. But if such objectionable part of the contract is severable, it will not affect the validity of the entire contract." 2 Ror. R. R. 1375.

In the case of *McNees v. Railway Co.* 22 Mo. App. 224, the action was brought to recover rebates upon a contract practically the same as that stated in the complaint in the case at bar. A demurrer was interposed to the complaint, upon the ground that it did not state facts sufficient to constitute a cause of action, and the question argued and decided was whether the contract

set forth was void as against public policy. Hall, J.,
in the course of his opinion, said: "The contract was
not illegal and void. It was not within the prohibition
of Revised Statutes, section 815, or section 821. Neither
was it within the prohibition of the common law against
any distinction or discrimination being made by a com-
mon carrier in favor of one against another. It was not
a discrimination against any one for the defendant to
agree with plaintiff to charge him less than the regular
tariff rates. The regular tariff rates were fixed and
known. By the contract, by means of a rebate, the
plaintiff was to be charged less than those rates, but
wholly without regard to what others were to be charged.
The object of the contract was not to discriminate against
any one, but was simply to give the plaintiff a less rate
than the fixed and regular rate. By the contract no dis-
crimination was made between the plaintiff and others.
Under the contract the defendant might not only have
charged every one the same rate given to plaintiff, but
even a less rate than that rate. To charge one a rate
less than the regular fixed rate is not discrimination.
But to charge one a higher rate than the lowest rate
given to any one else, under certain circumstances, is
discrimination."

The sections of the statute cited by the court need not
be quoted here. The statute was enacted to prevent un-
just discrimination.

In the case of *Christie v. Railway Co.* 32 Am. & Eng.
R. R. Cases, 569, it is held that "a common carrier has
the right to contract to ship freight at a lower rate than
the published tariff rate if he choose to do so; and such
a contract is not against public policy, unless the privi-
lege to ship at such rate is granted exclusively to the
shipper with whom it is made, or is denied to other ship-
pers. It is the exclusiveness of the privilege granted to
one and denied to another which makes the discrimina-
tion, and renders the contract void as against public pol-

icy.   No such exclusiveness or discrimination appears in
the contract sued upon, and the objection of the defend-
ant to the reception of any evidence was properly over-
ruled."    In this case the action was based upon an alleged
contract, whereby it was agreed that the plaintiff should
ship grain of various kinds from certain stations in the
state of Kansas to Chicago, Ill., and that on presentation
of bills for such shipments the plaintiff should pay the
usual and ordinary rates therefor, according to defend-
ant's tariff rates, and that defendant should pay to plaint-
iff all sums of money which defendant should receive
over and above the rate agreed upon between the parties.
The object of the suit was to recover from defendant the
difference between the sum paid by plaintiff according to
defendant's tariff rates and the amount that was, by the
agreement of the parties, to be paid.   *Regan v. Aiken,*
9 Lea, 609; *Ex parte Benson,* 18 S. C. 39; *Avinger v.
Railroad Co.* 35 Am. & Eng. R. R. Cases, 549; *Langdon
v. Robertson,* 13 Ont. 497, 30 Am. & Eng. R. R. Cases,
23; *Johnson v. Railroad Co.* 16 Fla. 623.

The cases cited clearly establish the proposition that
mere inequality between the rate charged a shipper and
the published tariff rates does not constitute unjust dis-
crimination within the meaning of the law.

The court below decided this case upon the authority
of *Scofield v. Railway Co.* 43 Ohio St. 571.   The case is
well considered, and contains a most exhaustive and in-
structive discussion of the question of discrimination,
but nowhere in all the fifty pages occupied by the dis-
cussion can there be found a syllable upon which the
conclusion that the contract in the case at bar was void
as against public policy can be predicated.   The principle
decided, briefly stated, is as follows:   " Where a lower
rate is given by such corporation to a favored shipper,
which is intended to give, and necessarily gives, an ex-
clusive monopoly to the favored shipper, affecting the
business and destroying the trade of other shippers, the

latter have the right to require an equal rate for all under like circumstances."

*Messenger v. Railroad Co.* 36 N. J. Law, 407, is cited in support of the judgment. The principle in that case is precisely the same as that decided in the Ohio case, and is stated in the syllabus in the following language: "An agreement by a railroad company to carry goods for certain persons at a cheaper rate than they will carry under the same conditions for others is void, as creating an illegal preference." The same case was reviewed a second time, and is reported in 37 N. J. Law, at page 531. The doctrine of these two cases is unquestionably sustained both by reason and authority.

Nevertheless, in the same state, in the case of *Stewart v. Railroad Co.* 38 N. J. Law, 505, it was expressly held that "a covenant by the Morris Canal & Banking Company not to allow to others a drawback from established rates on the transportation of merchandise over its canal, which it agreed to allow to the covenantee, is against public policy and void. Such a covenant does not, however, invalidate the entire contract in which it exists, and from the remainder of which it is severable. The agreement to allow the drawback to the covenantee is valid and enforceable, and others are entitled to equally reasonable terms."

In the case of *Hays v. Pennsylvania Co.* 12 Fed. Rep. 309, Baxter, J., in discussing the question of discrimination, says: "It is enough for present purposes to say that the defendant has no right to make unreasonable and unjust discriminations. But what are such discriminations? No rule can be formulated with sufficient flexibility to apply to every case that may arise. It may, however, be said that it is only when the discrimination inures to the undue advantage of one man, in consequence of some injustice inflicted on another, that the law intervenes for the protection of the latter."

In the light of these authorities, attention is now called to

the provisions of the constitution which relate to this subject. Section 6, article 15, declares that "all individuals, associations and corporations shall have equal rights to have persons and property transported over any railroad in this state, and no undue or unreasonable discrimination shall be made in charges or in facilities for transportation of freight or passengers within the state, and no railroad company, nor any lessee, manager or employee thereof, shall give any preference to individuals, associations or corporations in furnishing cars or motive power." That this is but a declaration of the common law is conceded. By this provision the elementary principles of the law of common carriers, above defined, are adopted as a part of the organic law of the state. Railway companies organized or authorized to do business within this state are subject to the law as declared by this constitutional provision. The language of the section is "that no undue or unreasonable discrimination shall be made in charges." By fair intendment it is clear that railway companies, under this provision, may discriminate, so long as such discrimination is neither "undue nor unjust." While this provision remains in force it may well be doubted whether either this court or the legislature can declare that a railway company shall not discriminate in charges at all, or that mere inequality in rates shall constitute an "undue or unjust" discrimination. By this provision railway companies are left at liberty to regulate the rates of transportation, and are not answerable for their conduct, in this respect, unless such charges are unreasonable, and by "undue and unjust" discrimination tend to create exclusive privileges, to the detriment of other shippers or the public at large.

It is clear that the contract set forth in the complaint, unless supplemented by proof of facts tending to establish an exclusive privilege or an unlawful preference, is not void within the meaning of this section. There is no presumption that the contract is void; and in this as in

all other cases, when mere inequality in charges appears, the parties should be allowed to show that by reason of existing circumstances or conditions no unjust preference or discrimination was either created or intended. The court cannot act *ex mero motu.* The burden is upon him who charges illegality. The defendant should have been required to answer, and to establish the iniquity of the agreement by proof.

In this connection attention is called to the case of *Railroad Co. v. Ervin,* 118 Ill. 250, which has been cited as authority in support of the judgment. In the syllabus of that case it is stated that "a contract between a railroad company and a shipper that the latter shall pay the regular and established rates of freight, the same as all other shippers, and that the company shall pay back to him, by way of rebate, a certain portion of the freight so charged, whereby such shipper will pay a less rate for transportation than that paid by others and the public generally for like services, under similar circumstances and for like distances, is void as being against public policy at the common law, and in violation of the statute against unjust discriminations." An examination of this case will clearly show: *First,* that the doctrine above stated is not sustained by the opinion; and *second,* that the decision is based upon a statute of which the constitutional provision of this state is in no sense a counterpart.

The case suggests an examination and discussion of the course of legislative enactment and judicial decision in Illinois. The suit was brought to recover drawbacks or rebates. The railroad company, by special plea, set up the contract, under which the plaintiff claimed. A demurrer to the special plea was sustained. Upon the trial, under the general issue, the railway company offered to prove that the arrangement by which the rebates were agreed to be paid was a secret arrangement; "that the rates, as given to the plaintiff, were private, and not

open to the public generally, and less than were charged to the public generally, less than the schedule rates, and less than any other shipper had, except Davis & Finney; that plaintiffs and Davis & Finney did the bulk of the grain business on the road; that no other grain shippers had such special rates and could not compete with plaintiffs." This evidence was excluded. The legislature had passed two different statutes. The one in force when the case of *Railroad Co. v. Elliott*, 76 Ill. 67 (cited by appellant), was decided had been repealed, and a subsequent statute enacted, which was in force when *Railroad Co. v. Ervin, supra*, was before the court. By the new statute it was declared, among other things, that " all such discriminating rates, charges, collections or receipts, whether made directly or by means of any rebate, drawback, or other shift or evasion, shall be deemed and taken against such railroad corporations as *prima facie* evidence of the unjust discriminations prohibited by the provisions of this act." R. S. Ill. 1874, ch. 114, sec. 88. This statute, in effect, established a new rule of evidence, which did not prevail in that state prior to its enactment. *Railroad Co. v. Elliott*, 76 Ill. 67. Discriminating rates are declared to be *prima facie* evidence of the unjust discriminations prohibited by the act. No new principle was created.

Discriminating rates were not made conclusive evidence of unjust discrimination under that statute. Indeed, the legislature of that state could not have lawfully enacted such a principle, under the constitution, as will be hereafter seen. The enactment of this statute resulted from a former decision of the supreme court construing a prior act. *Railroad Co. v. People*, 67 Ill. 11.

The act in force prior to 1873 prohibited any discrimination whatever in charges, and was intended to give effect to a constitutional provision, which reads as follows: "The general assembly shall pass laws to correct

abuses and prevent unjust discrimination or extortion in the rates of freight and passenger tariffs on the different roads in the state, and enforce such laws by adequate penalties, to the extent, if necessary for that purpose, of forfeiture of their property and franchises." In the case last cited Chief Justice Lawrence says: "This provision, expressly directing the legislature to pass laws to prevent unjust discrimination, is a recognition of the palpable fact that there may be discriminations which are not unjust, and by implication it restrains the power of the legislature to a prohibition of those which are unjust. That was undoubtedly the object of the legislature in passing the existing law. * * * But the act itself goes further. It forbids any discrimination whatever, under any circumstances, and whether just or unjust, in the charges for transporting the same classes of freight over equal distances, even though moving in opposite directions, and does not permit the companies to show that the discrimination is not unjust. The mere proof of the discrimination makes out a case against the railway companies, which they are not allowed to meet by evidence, showing the reason or propriety of the discrimination, and then, upon this sort of *ex parte* trial, imposes, as a penalty for the offense, a forfeiture of the franchise, which would often be equivalent to a fine of millions of dollars." He further says: "That the naked fact that a railway company charges a larger sum for transporting freight of the same class over a given distance than it is charging for the same distance over another part of its road, or in the opposite direction, is not of itself conclusive evidence of an unjust discrimination, will be manifest on a moment's consideration." Also: "We give this illustration for the purpose of showing that a difference of price for the same distance of transportation is not necessarily an unjust discrimination, and that any law must be fatally defective which infers guilt as a conclusive presumption, from the mere fact of dif-

ference of rates, without permitting the companies to show why the different rates were adopted."

And finally: "The opinion of the court is that, while the legislature has an unquestionable power to prohibit unjust discrimination in railway freights, no prosecution can be maintained under the existing act, until amended, because it does not prohibit unjust discrimination merely, but discrimination of any character, and because it does not allow the companies to explain the reason of the discrimination, but forfeits their franchise upon an arbitrary and conclusive presumption of guilt, to be drawn from the proof of an act that might be shown to be perfectly innocent. In these particulars the existing act violates the spirit of the constitution." This decision was made at the January term, 1873. The act construed in *Railroad Co. v. Ervin*, 118 Ill. 250, was approved May 2, 1873, and went into force in July of the same year.

The above discussion of the constitution and statutes of Illinois renders it clear that the case of *Railroad Co. v. Ervin, supra*, can have no weight in this state. The legislature of Illinois has laid down a new rule of evidence, under which the burden of justifying such a contract is upon the party who seeks to enforce it. At common law its invalidity must be shown by the party who attacks it. In this state the common law prevails.

The contract sought to be enforced in this case was, therefore, presumptively a lawful contract. The complaint, as an entirety, expressly shows that the appellant secured special rates, and by inference that such rates were less than schedule rates. For this reason alone the court below declared that the contract was against public policy. This was error. The demurrer should have been overruled, and the defendant required to answer. If defendant had answered that the contract was against public policy, because an unjust discrimination was intended, and the answer had been sustained by proof, the plaintiff could not have recovered.

The remaining questions in the case will now be briefly considered.

The contention that the receiver was without power to make the contract is without merit. It is expressly alleged, and in effect admitted by the demurrer, that the receiver managed and controlled the business of the company; that he operated the railway. It cannot be assumed that the contract was in violation of his authority until his authority in the premises is shown.

Upon the assumption that the contract was valid, other questions suggested by appellee's counsel will be briefly discussed.

The first general ground of demurrer stated is that the complaint does not state facts sufficient to constitute a cause of action. The rule is well established in this state that if there are facts well pleaded, sufficient to entitle a party to any relief, a demurrer will not be sustained upon this ground. In *Herfort v. Cramer*, 7 Colo. 483, it is held that "the pleading, to be subject to demurrer, 'must present defects so substantial in their nature and so fatal in their character as to authorize the court to say, taking all the facts to be admitted, that they furnish no cause of action whatever.'" If the complaint is tested by this principle, can it be said that, upon all the facts alleged, no cause of action whatever can be predicated? It appears that at the time the contract was made Ainsley was the agent of the receiver of appellee; that he made the contract as such agent; that by it he intended to bind the receiver; that the contract was adopted by the receiver as his own; that at the time the contract was made, and during all its life, he was operating the railway, and that he performed it in part by paying rebates according to its terms; that he received the moneys paid for freight by plaintiff, and used the same in the operation of the road; that he accounted for and paid over such moneys when discharged from his office; that he took a receipt from the railway company, by the terms of which that company

obligated itself to pay any other claims against him then outstanding; that this claim was existing at the time of his discharge.   These allegations clearly state a cause of action.   The contention that the cause is equitable, and that the allegations of the complaint are insufficient to entitle plaintiff to a decree reforming the contract for mutual mistake, cannot be entertained.   It is clear that upon proof of all the allegations of the complaint plaintiff would be entitled to a judgment, even if he failed to show that there was a mutual mistake in the manner of executing the contract within the meaning of equitable principles.

If the complaint fails to show that the plaintiff is entitled to the relief asked, it is not, for that reason, demurrable, because it does not state facts sufficient to constitute a cause of action.   *White v. Lyons*, 42 Cal. 279; *Canty v. Latterner*, 31 Minn. 239; *Hewitt v. Powers*, 84 Ind. 295; *Bayless v. Glenn*, 72 Ind. 5; *Moritz v. Splitt*, 55 Wis. 241; *Tewksbury v. Schulenberg*, 41 Wis. 584.

It is further contended that the complaint is demurrable for defect of parties defendant; that S. T. Smith should have been made a party, for the reason that, as a part of the relief asked, a reformation of the contract was prayed for.   It appears that Smith was discharged from his receivership long prior to the commencement of this action.   It is a well-settled principle that a receiver is not personally liable upon a contract or covenant made officially.   It has already been said that it affirmatively appears in the complaint that this was the contract of the receiver, and not of Smith as an individual.   This being so, it would be idle to make him a party, as no relief could be had against him.   He was neither a necessary nor a proper party to the action. High, Rec. §§ 272, 273; *Arnold v. Bank*, 27 Barb. 425; *Livingston v. Pettigrew*, 7 Lans. 405; *Trust Co. v. Rail-*

*road Co.* 2 McCrary, 181; *Brown v. Railway Co.* 96 Ill. 297.

The judgment should be reversed and the cause remanded, with leave to appellee to answer.

RICHMOND, C., concurs.    REED, C., dissents.

PER CURIAM.    For the reasons stated in the foregoing opinion the judgment is reversed and the cause remanded to the district court of Arapahoe county as successor under the law to the said superior court.

*Reversed.*