## Thomas W. Kinser v. Calumet Fire Clay Co.

1. AGENTS—*To Sell—Power.*—An agent to sell has power to do only what is usual in the course of the business of selling. He is not authorized to make a contract of indemnity.

2. JURY—*Where the Right to Poll Does Not Exist.*—Where an instruction is given to find for the plaintiff, the defendant has no right to poll the jury. GARY dissents.

Assumpsit, for goods sold. Appeal from the Circuit Court of Cook County; the Hon. FRANK ADAMS, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed June 1, 1896.

### STATEMENT OF THE CASE.

In this case, appellee, The Calumet Fire Clay Company, an Ohio corporation, manufacturers of sewer pipe at Calumet, Ohio, brought suit against the appellant, Kinser, who lives in Terre Haute, Indiana, and who was there engaged as a public works contractor in the line of building sewers and pavements.

A default was taken against Kinser, and shortly thereafter a judgment was entered against him for $1,973.86. December 14, 1895, the court set aside the judgment upon condition that the defendant execute a bond for the payment of whatever judgment might be rendered. A satisfactory bond and pleas were at once filed by Kinser. The pleas filed thereto were: (1) general issue; (2) satisfaction; (3) set-off, the common counts; (4) special plea of set-off. The plea of set-off sets out that at the instance and request of the plaintiff, defendant entered into a contract with the city of Anderson, Indiana, to construct for said city, within its limits, a system of sewers, for which said city agreed to pay the defendant $71,850, and at the same time and contemporaneously with the making of said contract, defendant agreed to purchase of plaintiff the sewer pipe necessary to go in said system of sewers, upon the plaintiff representing and agreeing that it would allow him, the defendant, a credit on the purchase price of said sewer pipe equal to the amount, if any, which he, the defendant, might lose in completing the contract with the city of Anderson according to the specifications, at the price of $71,850; that defendant completed the contract at a cost to him of $78,000, and has paid to the plaintiff all he agreed to pay it as the contract price for such sewer pipe, except $1,650; that the plaintiff was active as the work progressed in collecting from the defendant the purchase price of said sewer pipe, and defendant upon the completion of said work found it had cost him more than the contract price; that if he were to pay the plaintiff the amount claimed of him, he would lose on said contract with the city of Anderson, $6,000. That plaintiff was so informed and requested to account with the defendant, to pay over to him the amount he would lose on said contract over and above $1,650, all of which plaintiff has refused to do; which said sum of money, which has been overpaid to the plaintiff, to wit, $6,000, so due from the plaintiff to the defendant as aforesaid, exceeds the damages sustained by plaintiff by reason of the non-performance by the defendant of the several supposed premises in the said

declaration mentioned, and out of which said sum of money the defendant is ready and willing and hereby offers to set off and allow to the plaintiff, and this the defendant is ready to verify. Wherefore he prays judgment, if the plaintiff ought to have its aforesaid action against him, and that he may have judgment against the plaintiff for $4,000.

The case coming on for trial, the plaintiff introduced the following paper, which was signed by Gresham, the former attorney for Kinser, and by plaintiff's attorney, as follows:

"It is hereby stipulated and agreed by and between the parties hereto, that the plaintiff delivered to the defendant the goods for which this suit is brought to the amount and value of the damage assessed on the default heretofore entered in said cause, and set aside, over and above all payments made on account thereof; and this stipulation is made for the purpose of dispensing with formal proof of the delivery of the goods and the amount of payments made on account thereof, leaving the defendant to make proof of any other defense he has set out by his pleadings."

Signed:     WILLIAM P. HAYES, and<br>
SULLIVAN & McARDLE,<br>
Plaintiff's attorneys.<br>
OTTO GRESHAM,<br>
Attorney for defendant.

No other evidence in chief was introduced by plaintiff.

The defendant testified: "I bought the sewer pipe from Frank Hartford, representing the fire company; that was the only goods sold to me by this company. Mr. Hartford represented to me that he was selling this pipe for the Calumet Fire Clay Company; that he was also interested in the company; that he wanted to sell me the piping; that he wanted me to figure on his goods. I was about to figure on the contract for a sewer at Anderson, Indiana, a public improvement; I was figuring on this for some time. Mr. Hartford was there, in and out the room where I was making the figures on building the sewer at Anderson. He gave me prices, and I made my figures accordingly. He came in during the time, several times, and looked over my figures.

My proposition at that time was something over $80,000. I had finished up, and he said to me: 'Look here, Kinser, you have got to cut your figures down, or you will be beaten in this bidding.' The bidding was competitive bidding. He said to me I would have to reduce those figures. I said: 'I can't do it and get out on it, on the sewer.'

I was engaged in bidding for a sewer for the town of Anderson, Indiana, and I had a bid made out for $80,000 for this sewer work, for the purpose of bidding in competition for the purpose of getting all this sewer work in the town of Anderson. And Hartford came to me, and I was figuring on buying the sewer brick from him. He came to me and told me that I should reduce that bid below $72,000; that another fellow had made a bid of $72,000; and I says to him: 'I can't do it and come out on it;' and he says: 'If you can do that we will see that you don't lose any money. We want to sell our pipe, and we don't want to sell it to this other party. I want to sell this pipe to you. There is one other man that is going to bid on this contract and I will see that you don't lose any money.' After he made this statement I reduced the bid, under his promise that his company would see me out safe. I reduced it to a shade under $72,000.

I then got the contract with the town of Anderson; at the time I made these figures, it was arranged that I was to buy the sewer pipe from him; that was a part of the deal; at that time figures were given to me of the price at which the sewer pipes would be sold to me. I think this contract was in May, 1891; I went on and performed this sewer work for the town of Anderson under the bid that I put in at that time, which was accepted by the town of Anderson, and sewer pipe was delivered to me by the plaintiff in this case, and the sewer pipe that was delivered to me was thereafter settled for by me at the price that was originally orally agreed upon by this agent it would be sold me at; I have all the measurements of that settlement.

I lost $6,000 on this contract with the town of Anderson; no part of that loss has ever been paid to me by the plaintiff."

Cross-examination:

" The talk I had with Mr. Hartford was at Anderson; I signed this contract (shown witness) at Calumet, Ohio, after I had this talk with Hartford; letter shown me dated December 19, 1892, is in the handwriting of my son, who is my bookkeeper; he was authorized to do my correspondence."

Letter offered for identification and marked plaintiff's Exhibit 1, is as follows:

" T. W. Kinser & Son, General Contractors,
Sewers and Paving a Specialty.

Terre Haute, Ind., Dec. 19, 1892.

Calumet Fire Clay Co., Calumet, O.

Dear Sirs: Yours received, note contents, and will say that I am going over to Anderson in the morning. The engineer says he thinks he will get the estimate out some time next week, so, just as soon as I get the money you shall be paid in full.

I wish you would have those dishes that I ordered of Bowles forwarded here before Christmas if possible.

I remain, yours repty.,
T. W. Kinser."

The letter dated August 28, 1894, is in the handwriting of my son. He didn't know of the entire circumstances of the case, but he had authority to transact business for me.

Letter marked for identification, Exhibit 2, as follows:

" T. W. Kinser & Son, Contractors,
Headquarters, Terre Haute, Ind.,
Sewers and Paving a Specialty.

Terre Haute, Ind., Aug. 28, 1894.

Calumet Fire Clay Co., Calumet, Ohio.

Dear Sirs: We have not sold our bonds yet, and just as soon as we do we shall remit you in full. The market has been flooded with paper, and it is a tedious matter to get them off. However, we expect to soon.

We can not settle before this for we have not the funds to do so.

Yours, very truly,
T. W. Kinser."

The letter dated June 26, 1893, was written by my son. Letter offered for identification, marked Exhibit 2, as follows:

"T. W. KINSER & SON, General Contractors,
            Sewers, Paving and Railroads.

HEADQUARTERS, TERRE HAUTE, IND., June 26, 1893.
Calumet Fire Clay Co., Calumet, O.

DEAR SIRS: Will be in Anderson in the course of ten days and will authorize the city treasurer to turn all moneys over to you to the amount of your account.

Hoping this will meet with your approval, I am,
                    Respt'y yours,
                        THOS. W. KINSER."

The court instructed the jury to find a verdict for the plaintiff for $1,973.86.

HAMLINE, SCOTT & LORD, attorneys for appellant.

WM. P. HAYS and SULLIVAN & MCARDLE, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

Appellant contends that an agent of the plaintiff, engaged in selling its goods, is presumed to be authorized to sell the same, conditioned that the prices therefor shall be such that the buyer shall not lose anything on a contract he is undertaking.

There is no evidence that the plaintiff ever heard that its agent had so agreed, until this suit was begun, long after the sewer pipe had been sent, received, and put in the ground.

The defendant repeatedly promised to pay in full for the pipe, making no claim for indemnity against loss on his contract.

An agent to sell is not authorized to make such a contract of indemnity as appellant sets up. The consideration which moves an agent when selling does not enlarge his authority.

An agent, to sell, has power to do only what is usual in the course of the business of selling.    Hess & Co. v. Heegaard, 54 Ill. App. 227; T. W. &. W. Ry. Co. v. Elliott, 76 Ill. 67. Cooley v. Perrine, 41 N. J. L. 322; Story on Agency, 9th Ed., Sec. 170.

If the defendant had notified the plaintiff that he had bought the pipe upon terms that he should be indemnified against loss, in the manner he now claims, and the plaintiff had thereafter sent the pipe, a different question would be presented.

The instruction to the jury was proper, and counsel had no right to waste the time of the court in an endeavor to make them disregard the instruction the court had given to them.   The verdict is, in form only, that of the jury, as the judgment is, in form only, that of the court.

The finding and judgment are such as the law pronounces upon the undisputed facts.

Counsel, after such an instruction had been given, had no right to poll the jury; it was their duty to obey the instruction of the court, and for counsel to insist upon polling them was, in effect, to ask each juror if he obeyed the instruction of the court — discharged his duty.

The judgment of the Circuit Court is affirmed.

Mr. Presiding Justice Gary.

I dissent as to the polling of the jury, not that there is any sense in doing it, but because it is part of the system of this State that the jury shall be at liberty to disregard the law.

But in all seriousness, it is a dangerous power with which to intrust a judge, that he may give a direction which a jury shall obey, or that he may, without the assent of the jury, enter as a verdict what the jury never found.

If he may do so in a case where the proof is clear and beyond possibility of doubt, then it is in his province to decide when that case exists.

The liberty of Englishmen has in former times stood upon denying that power to a judge.    Penn's Case, 6 Howell St. Tr. 951; Bushel's Case, Vaughn's Reports, 135.