Syllabus.

THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

*v.*

CHARLES L. JONES.

*Filed at Springfield April 2, 1894.*

1. RAILROADS—*act relating to extortion and unjust discrimination.* The first section of the act of 1873, entitled "An act to prevent extortion and unjust discrimination in the rates charged for the transportation of passengers and freights on railroads in this State," etc., is merely declaratory of a well known principle of the common law. At common law, carriers must carry all freight offered to them, and can only make a reasonable charge for so doing.

2. SAME—*power of legislature to fix reasonable rates for carriage.* The legislature has the power to declare what is a reasonable compensation, or to fix the reasonable maximum rates of charges, but in the absence of statutory regulations upon the subject the courts must decide what is reasonable.

3. SAME—*regulation of their charges—power of legislature and commissions.* The legislature has the power to directly fix the rates of charges. It has the right to declare what is reasonable, and when it does so, its declaration is conclusive as to the reasonableness of the rates, and a charge beyond the maximum fixed by it must be regarded as unreasonable. But where the legislature creates a commission to regulate the rates of charges, such commission has no power to make a schedule of rates which shall be final and conclusive evidence as to the unreasonableness of the charges, because judicial inquiry is thereby cut off.

4. Where a commission is created with authority to make schedules which shall be *prima facie* evidence of the reasonableness of the rates of carriers by rail, the court, in a suit against the carrier, can inquire and determine what is a reasonable rate. Such is the character of the Illinois act of 1873.

5. SAME—*power of legislature to fix reasonable maximum charges.* Under the constitutional provisions of this State, (sec. 12, art. 11, and sec. 15, art. 11,) the legislature has the right, and it is its prerogative, if it chooses to exercise it, to pass a law establishing or fixing reasonable maximum rates of charges, and when it passed the act of 1873 it did not choose to exercise the power thus imposed upon it. That act does not establish reasonable maximum rates, nor does it delegate to the Board of Railroad and Warehouse Commissioners the power to establish such rates.

6. A law of the legislature establishing a reasonable maximum rate of charges for the transportation of passengers or property on railroads of this State is a valid and constitutional law. Such a law or regulation does not impair the obligation of the contract in the charters of the railway companies. When a maximum is so established, the rates fixed by the directors must conform to its requirements, otherwise the by-laws would be repugnant to the laws of the State.

7. SAME — *extortion and unjust discrimination — statute construed.* The taking of higher rates than those fixed by the commissioners' schedule of rates is not the exact form of the statutory offense, and the taking of such higher rates will not subject to the penalties of the statute, upon making proof that the rates were fair and reasonable. Still to constitue the offense really designed and intended by statute, regarding it in its whole scope and purpose, the rates taken must be in excess of the schedule rates.

8. Section 1 of the act of 1873, relating to extortion and unjust discrimination, is to be construed with section 8, although such act is a penal law. Although penal laws are to be construed strictly, yet the object in construing them, as well as other statutes, is to ascertain the legislative intent.

9. The act of 1873, making it penal for any railroad company to extort unreasonable charges for the transportation of passengers or freight, or to make unjust discrimination, is not void for uncertainty in defining the offense for the commission of which it imposes the penalties therein mentioned.

10. Section 8, which authorizes the Railroad and Warehouse Commissioners to fix for each of the railroads in the State a schedule of reasonable maximum rates, is not unconstitutional, as being an attempted delegation of legislative power.

11. The power to regulate and control the charges of railroad companies, or other agencies engaged in public employments, is legislative, and not judicial, and, independently of constitutional provisions, it is now the well settled doctrine in this country, that the legislatures of the States have the power to regulate and settle the freight and passenger charges of railroad companies, and the charges for services of other employments which are public in their character, subject only to such restraints as are imposed by charter contracts and by the authority of Congress to regulate foreign and inter-State commerce. The legislature may authorize others to do things which it might properly, but can not conveniently or advantageously, do itself.

12. SAME — *fixing charges by commissioners.* Where a board is authorized to make a schedule of rates, and their schedule is merely given the force and effect of *prima facie* evidence as to the reasonableness of the rates, in a suit involving the question of such reasonable-

ness, there is no delegation to the board of the legislative power to establish rates. The legislature thereby merely refrains from the exercise of its constitutional power, and, by leaving the question as to the reasonableness of the rate open, makes room for the exercise by the courts of their jurisdiction upon the subject.

13.  The final tribunal of arbitrament is not the judiciary, but the legislature. But when the legislature declares that the charges shall be reasonable, or, what is the same thing, allows the common law rule to that effect to prevail, and leaves the matter there, then resort may be had to the courts to inquire judicially whether the charges are reasonable.

14.  SAME—*extortion—constitutionality of law limiting charges.*  The act of 1873, entitled "An act to prevent extortion and unjust discrimination in the rates charged for the transportation of passengers and freight on railroads in this State," etc., and making the schedule of the commissioners *prima facie* evidence that the rates therein fixed are reasonable maximum rates of charges, is not unconstitutional and void, as depriving the carriers of their property without due process of law, or as infringing upon the right of trial by jury.

15.  The act of 1873, relating to extortion and unjust discrimination by railroads, is not rendered unconstitutional or void by making the schedule of the commissioners *prima facie* evidence that the rates therein fixed are reasonable maximum rates of charges. The legislature has undoubted power to prescribe the rules of evidence.

16.  SAME—*publication of schedules—evidence of.*  A certificate of the Railroad and Warehouse Commissioners showed that publication of both the classification and the schedule was made, not only for three successive weeks, but for five successive weeks:  *Held,* that the provision of section 8 as to publication was fully complied with. The trial court was authorized to admit it, and when admitted, it was *prima facie* evidence to show that it was the schedule of the rates of charges fixed by them.

17.  SAME—*statute against extortion construed.*  The first section of the act of 1873, relating to extortion and unjust discrimination, and read in connection with the title and sections 7, 8 and 11, applies only to charges of reasonable rates for such transportation within the State as is not a part of a continuous transportation without the State, and therefore does not infringe upon the power of Congress to regulate inter-State commerce.

18.  So far as the provisions of the act of 1873, relating to the charges of unreasonable rates, are concerned, it was not the intention of the legislature to make them apply to any other kind of transportation than that which should occur wholly within the boundaries of this State, or any other kind of contracts than those for a carriage which

begins and ends within the State, disconnected from a continuous transportation through or into other States.

19.   CONSTITUTIONAL LAW—*when part of statute is in violation of constitution.*   Where a part of a statute is unconstitutional, the remainder will not be declared to be unconstitutional also, if the two are distinct and separable, so that the latter may stand though the former becomes of no effect.   If, when the unconstitutional portion is stricken out, and that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be retained.

20.   If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other.   A legislative act may be entirely valid as to some classes of cases and clearly void as to others.

21.   Part of the act of 1873 relates to the prevention of unjust discrimination between persons and places in the rates charged for transportation, while other parts relate to the prevention of charges that exceed fair and reasonable rates.   It was *held*, that the law was good so far as it related to unreasonable rates of charges wholly within the State.

22.   SAME—*laws of evidence subject to legislative change.*   No one has a vested right in the rules of evidence.   They pertain to the remedies provided by the State for its citizens, and do not constitute a part of any contract.   They are subject to control and modification by the legislature, whether affecting proof of existing rights, or rights subsequently acquired.   Changes in them may be made applicable to existing causes of action.

23.   LIMITATION—*as to amended declaration.*   Where an amendment to a declaration sets up no new matter or claim, but merely re-states in a different form the cause of action set out in the original declaration, it relates back to the commencement of the suit, and the Statute of Limitations is arrested at that point; but when the amendment introduces a new or different cause of action it is treated as a new suit, begun at the time when such amendment is filed, and the statute is arrested at the latter date.

24.   SAME—*action against a railroad company to recover a penalty.*   Where counts are filed against a railway company which seek to recover treble damages allowed by the statute for a violation of its provisions, the two years statute of limitations may be properly pleaded, as in this State actions for a statutory penalty must be brought within two years next after the cause of action accrued.

25.   Where the original declaration sought to recover treble damages allowed by statute for a violation of its provisions, and an amended count was filed, more than seven years after the filing of the original

declaration, to recover damages for a violation of the defendant's common law liability as a carrier for charging more than reasonable rates, it was held barred by the five years statute of limitations.

26. Although an amendment may properly be allowed, it does not necessarily, when allowed, have the effect of relating back to the date of bringing the suit, for the purpose of determining questions of limitations. An amendment which introduces a cause of action barred by limitation, is ineffectual to avoid the statutory bar.

27. Where the original declaration sets up overcharges upon certain shipments, and the amended declaration sets up overcharges on other and different shipments, the causes of action are not the same.

APPEAL from the Circuit Court of Knox county; the Hon. JOHN J. GLENN, Judge, presiding.

This was an action in debt, brought by appellee, Charles L. Jones, against appellant, the Chicago, Burlington and Quincy Railroad Company, under the act of 1873, to recover penalties for alleged overcharges on shipments of live stock from points on appellant's road in this State to the Union Stock Yards, Chicago. The suit was brought in the circuit court of Knox county, on October 17, 1882.

On May 25, 1883, appellee filed a declaration, consisting of two special counts. The first count alleged that the Railroad and Warehouse Commissioners made and published, prior to October 2, 1873, as required by law, a schedule of reasonable maximum rates for appellant; that appellee shipped over appellant's road, subsequent to that date, certain cars of live stock from certain points on its road, to Chicago; that appellant charged and received from appellee certain rates of freight which were in excess of the rates fixed in the commissioners' schedule, whereby, by force of the statute, an action accrued to appellee to recover three times the amount of the overcharge, and a reasonable attorney's fee. The second count was the same in form, except that it alleged a second schedule made and published by the commissioners prior to December 2, 1881, and certain shipments made and freights

charged and received in excess of the commissioners' rates subsequent to that date.

On June 9, 1883, appellant filed four pleas to the declaration. The first two pleas set out at length the corporate organization of appellant, and the several special charters of the different companies forming it by consolidation; that by these charters appellant was given power by the legislature to fix its own rates of freight and fare, and that the statute under which the suit was brought was in violation of the obligation of the contract between it and the State. The third plea was *nil debet*, and the fourth, that the cause of action did not accrue within two years.

On June 11, 1883, the cause was removed to the Circuit Court of the United States, but, on September 8, 1890, was remanded and re-docketed in the State Court.

In February, 1891, appellee filed an amended declaration, which consisted of one hundred and ninety-one special counts. All of these counts, except the last, declared on single shipments on different dates, and were the same in form. Each of the first one hundred and twenty-four counts averred the making and publication by the Railroad and Warehouse Commissioners of a schedule of reasonable maximum rates for appellant prior to October 2, 1873, the rate fixed by the schedule, the rate charged, and the excess, and that thereby, by force of the statute, a cause of action accrued to the plaintiff for three times the alleged overcharge, and an attorney's fee. The remaining counts, except the last, were the same in form, except that they averred the making of a second schedule prior to December 2, 1881, and shipments subsequent to that date. The last count did not count on the statute, but averred certain shipments, and that the rates charged and received were unreasonable, and that thereby appellant became indebted to appellee for the alleged overcharge above a reasonable rate.

To this declaration appellant filed seven pleas. The first and second to all the counts, except the last, set up appellant's charters, and the right claimed by it to fix its own rates, and that the statute sued on was a violation of the obligation of its contract with the State, substantially as in the first and second pleas to the original declaration. The third plea was *nil debet.* The fourth and seventh pleas to all the counts, except the last, averred that the causes of action alleged did not accrue within two years before the commencement of the suit. The sixth plea averred that the cause of action set out in the last count did not accrue to the appellee within five years before the filing, or obtaining leave to file, that count.

Appellee joined issue on the third, fourth and seventh pleas, and filed a demurrer to the first, second and sixth pleas, the fifth having been withdrawn. The demurrer raised two questions: First, whether appellant's first and second pleas, setting up its charter provisions, constituted a defense; and second, whether the cause of action set up by the last additional count was a different cause of action from that declared on in the original declaration. The court sustained appellee's demurrer to the first and second pleas and overruled his demurrer to the sixth. Issues were subsequently joined, and a trial was had by a jury.

On the trial appellee gave evidence showing the various shipments made by him for two years prior to the commencement of the suit, and the amount of freight paid on each, and, to establish that the rate charged was more than a reasonable rate, and the alleged overcharges, gave in evidence: First, a schedule of maximum rates purporting to have been made by the Railroad and Warehouse Commissioners for appellant, dated September 1, 1873, consisting of a classification of freight and a tabulation of rates referring to this classification, with a certificate of the Railroad and Warehouse Commissioners attached as to the dates of publication; sec-

ond, a like schedule of reasonable maximum rates purporting to have been made by the Railroad and Warehouse Commissioners for appellant, dated December 1, 1881, and also having a certificate of the Railroad Commissioners attached as to the dates of publication.

To the admission of these schedules in evidence appellant objected, on the grounds, among others: First, that the statute on which the suit was brought was unconstitutional and void; second, that the provision of the statute making the commissioners' schedule *prima facie* evidence of reasonable maximum rates was unconstitutional and void; third, that the schedule was not published as required by the statute, and therefore never went into effect as a schedule.

Among the instructions asked by appellant and refused by the court were: First, an instruction that under the pleadings and evidence the plaintiff was not entitled to recover; second, an instruction that in arriving at their verdict the jury should disregard the schedule of September, 1873; third, an instruction that in arriving at their verdict the jury should disregard the schedule of December, 1881.

The jury rendered a verdict in favor of appellee for $2868.60, and the court subsequently assessed appellee's attorney's fee at $1200. A motion for new trial was entered and overruled, and judgment was rendered in favor of appellee for the amount of the verdict and costs. From this judgment appellant has appealed to this court.

Messrs. Herrick & Allen, for the appellant:

The statute under which the suit was brought is void for uncertainty, in not defining the offenses for which the large and multiplied penalties it provides are imposed. It is well settled, that the provisions of this character are penal, and not remedial to the individual, and that the amount recovered is a penalty. *Rood* v. *Railroad Co.* 43 Wis. 146; *Railroad Co.* v. *Hill*, 11 Bradw. 248; *Diversey* v. *Smith*, 103 Ill. 378.

Statute inflicting penalties—void for uncertainty. *United States* v. *Sharp,* 1 Pet. 122 ; Bishop on Stat. Crimes, sec. 41 ; Dwarris on Stat. 652 ; *McConnerville* v. *Mayor,* 39 N. J. 38 ; *United States* v. *Bridge Co.* 45 Fed. Rep. 178 ; *Railroad Co.* v. *Railroad Comrs.* 19 id. 679.

The provision of the statute (sec. 8) authorizing the commissioners to make for each of the railroads of the State a schedule of reasonable maximum rates is unconstitutional, as an attempted delegation of legislative power. Const. 1870, sec. 12, art. 11 ; Cooley's Const. Lim. 139 ; *Munse's case,* 93 U. S. 178 ; *Budd* v. *New York,* 143 id. 517 ; *Ruggles* v. *People,* 91 Ill. 256 ; *Railroad Co.* v. *People,* 77 id. 443 ; *Railway Co.* v. *People,* 104 id. 476.

The cases of *Munn* v. *Illinois,* 94 U. S. 113, *Railroad Co.* v. *Iowa,* id. 155, *Peik* v. *Railway Co.* id. 164, *Railroad Co.* v. *Ackley,* id. 179, *Railroad Co.* v. *Blake,* id. 180, *Stone* v. *Wisconsin,* id. 181, *Ruggles* v. *Illinois,* 108 id. 526, *Railroad Co.* v. *Illinois,* id. 541, and *Dow* v. *Bielman,* 125 id. 680, all arose on statutes expressly fixing the rates, the legality of which was involved.

The provision of the statute making the commissioners' schedule *prima facie* evidence that the rates therein fixed are reasonable maximum rates of charges is unconstitutional and void. *Plimpton* v. *Town of Somerset,* 33 Vt. 283 ; *Francis* v. *Baker,* 11 R. I. 103 ; *State* v. *Beswick,* 13 id. 211 ; *People* v. *Lyon,* 27 Hun, 180 ; *King* v. *Hopkins,* 57 N. H. 234 ; *Copp* v. *Henniker,* 55 id. 179.

The statute having been held unconstitutional as to interState shipments, is void as a whole. *Railway Co.* v. *Illinois,* 118 U. S. 557 ; *Virginia Corp. Cases,* 114 id. 304 ; *Baldwin* v. *Franks,* 120 id. 678 ; *United States* v. *Reeve,* 92 id. 220 ; *People* v. *Railway Co.* 104 Ill. 483.

The statute granting the power to the railroad commissioners to make a schedule of reasonable maximum rates for appellant, and imposing penalties on appellant for a violation

of its provisions as to rates, impaired the obligation of appellant's contract with the State. *People* v. *Ruggles*, 108 U. S. 256 ; *Ruggles* v. *Illinois*, id. 526 ; *Commissioners* v. *Railroad Co.* 116 id. 330.

The schedule of 1873 was not published as required by statute, and for that reason did not go into effect. *Railroad Co.* v. *Blackwood*, 14 Bradw. 503.

Mr. J. B. Cessne, and Messrs. Willoughby & Barnes, for the appellee :

That the statute is not void for uncertainty in defining the offense, see *Railroad Co.* v. *Railway Comrs.* 19 Fed. Rep. 679 ; *Railroad Co.* v. *People*, 77 Ill. 443 ; *Railroad Co.* v. *People*, 67 id. 11.

The act in question is not unconstitutional, as an attempted delegation of legislation. *People* v. *Harper*, 91 Ill. 357 ; *State* v. *Railway Co.* 38 Minn. 299 ; *Railroad Co.* v. *Smith*, 70 Ga. 694.

It is not unconstitutional because it makes the schedule *prima facie* evidence of the reasonableness of the rates fixed. *Plimpton* v. *Somerset*, 33 Vt. 283 ; *Copp* v. *Henniker*, 55 N. H. 179 ; *King* v. *Hopkins*, 57 id. 334 ; *Francis* v. *Baker*, 11 R. I. 103 ; *State* v. *Beswick*, 13 id. 211.

It is, however, competent for the legislature to change the rules and presumptions of evidence, even in criminal, cases. *Commonwealth* v. *Williams*, 6 Gray, 1.

The power of the legislature to change or modify existing rules of evidence, or to establish new ones, has been exercised too long to be a matter of doubt. 2 Rice on Evidence, 807 ; *State* v. *Hurley*, 54 Me. 562.

The act of 1873 is not unconstitutional except so far as it attempts to interfere with inter-State commerce. In all other respects it is a valid law. *Railway Co.* v. *Illinois*, 118 U. S. 557 ; *People* v. *Railroad Co.* 104 Ill. 476 ; *Peik* v. *Railway Co.* 94 U. S. 164 ; *Railroad Co.* v. *Iowa*, id. 155 ; *Railway Co.* v. *Minnesota*, 134 id. 418.

The statute does not impair the obligation of appellant's contract with the State. *Ruggles* v. *People*, 91 Ill. 256; *Ruggles* v. *Illinois*, 108 U. S. 526.

The same cause of action may be the foundation both of a common law and a statutory suit. *Bishop* v. *Baker*, 19 Pick. 517; *Wooster* v. *Canal Bridge*, 16 id. 541; *Smith* v. *Palmer*, 6 Cush. 513.

The date in a declaration is not material. *Gebhart* v. *Adams*, 23 Ill. 397; *Searing* v. *Butler*, 69 id. 575.

There is no difference, at common law, as to an amendment, between penal and other actions. 1 Chitty's Pl. 373; *Goodridge* v. *Railway Co.* 35 Fed. Rep. 35.

The plaintiff may re-state his cause of action by way of amendment, and if the cause of action is not changed, or its identity remains the same, the Statute of Limitations is arrested at the filing of the original declaration. *Dickson* v. *Railroad Co.* 81 Ill. 215; *McCall* v. *Lee*, 120 id. 261; *Hanies* v. *Railroad Co.* 9 Bradw. 105.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The questions, presented by this record, concern the validity of the system, under which, for twenty years or more, the rates of railroad charges for the transportation of passengers and freight have been controlled and regulated by this State through the medium of a board of Railroad and Warehouse Commissioners.

The principal points, raised by the demurrers to the pleas, by the objections to the introduction of evidence, and by the refusal of instructions, relate to the constitutionality of the Act of the legislature of this State, approved May 2, 1873, in force July 1, 1873, entitled "An Act to prevent extortion and unjust discrimination in the rates charged for the transportation of passengers and freights on railroads in this State, and to punish the same, and prescribe a mode of procedure and rules of evidence in relation thereto, and to repeal

an Act entitled 'An Act to prevent unjust discriminations and extortions in the rates to be charged by the different railroads in this State for the transportation of freights on said roads,' approved April 7, A. D. 1871." (2 Starr & Cur. Ann. Stat. p. 1961; Rev. Stat. 1885, chap. 114, page 951, secs. 124-133).

Section 1 provides: . "If any railroad corporation, etc., shall charge, collect, demand or receive more than a fair and reasonable rate of toll or compensation for the transportation of passengers or freight, * * * the same shall be deemed guilty of extortion, and upon conviction thereof shall be dealt with as hereinafter provided."

Section 6 provides: "If any railroad corporation shall, in violation of any of the provisions of this act, ask, demand, charge or receive of any person or corporation any extortionate charge or charges for the transportation of any passengers, goods, merchandise or property, etc., the person or corporation so offended against may, for each offense, recover from such railroad corporation, in any form of action, three times the amount of the damages sustained by the party aggrieved, together with costs of suit and a reasonable attorney's fee, to be fixed by the court," etc.

Section 8 is as follows: "The Railroad and Warehouse Commissioners are hereby directed to make, for each of the railroad corporations doing business in this State, as soon as practicable, a schedule of reasonable maximum rates of the charges for the transportation of passengers and freights and cars on each of said railroads, and such schedule shall, in all suits brought against such railroad corporations wherein is in any way involved the charges of any such railroad corporation for the transportation of any passengers or freight or cars, or unjust discrimination in relation thereto, be deemed and taken, in all courts of this State, as *prima facie* evidence that the rates therein fixed are reasonable maximum rates of charges for the transportation of passengers and freight and cars, upon the railroads for which said schedules may have

been respectively prepared. Said commissioners shall, from time to time, and as often as circumstances may require, change and revise such schedule. When any schedule shall have been made or revised as aforesaid, it shall be the duty of said commissioners to cause publication thereof to be made for three successive weeks in some public newspaper published in the city of Springfield, in this State. All such schedules heretofore or hereafter made, purporting to be printed or published as aforesaid, shall be received and held in all such suits as *prima facie* evidence of the schedules of said commissioners, without further proof than the production of the schedules desired to be used as evidence, with a certificate of the Railroad and Warehouse Commissioners that the same is a true copy of a schedule prepared by them for the railroad company or corporation therein named, and that the same has been published as required by law, stating the name of the paper in which the same was published, together with the date of such publication."

*First,* the first ground, upon which counsel for appellant attack the Act, is that it is void for uncertainty in not defining the offenses, for which the penalties provided for are imposed. The basis of this attack is found in the words: "If any railroad corporation, etc., shall charge, etc., more than a fair and reasonable rate," etc. It is said, that it is uncertain what a fair and reasonable rate is, as the determination of that question will depend upon a variety of considerations, such for instance, as the character of the freight, the necessity of despatch, the cost of cleaning and unloading cars, the risk of liability as affected by the value of the articles carried, the volume of business, the amount of car-room required, the difficulty of the service, the special attention demanded, etc.; that the offense of charging more than a fair and reasonable rate can only be defined, when the jury, in each particular case, shall decide from the evidence before them what is a fair and reasonable rate; that the statute, being penal in its

character, should describe the offense in terms which are free from ambiguity ; and that the enforcement of a statute, whose meaning is thus doubtful, violates that provision in the Federal and State constitutions, which declares that no person shall be deprived "of life, liberty or property without due process of law."

The difficulties, which stand in the way of determining what are reasonable rates, also stand in the way of embodying in a legal enactment such an exact definition as is insisted upon. If the legislature, in the Act passed by it, fixes particular rates or charges, strict compliance therewith may work hardship, in view of the impossibility of always providing in advance for the effect of varying circumstances and conditions. The first section of the statute is merely declaratory of a well known principle of the common law. At common law, the common carrier was obliged to receive and carry all goods offered for transportation upon receiving a reasonable hire ; (*Messenger* v. *Penn. R. Co.* 36 N. J. Law, 407 ; *Express Co.* v. *Maine Cent. R. Co.* 57 Me. 188) ; and the court was to judge of the reasonableness of the freight charges. (*Gard* v. *Collard*, 6 M. & S. 70 ; *Lowden* v. *Heirons*, 2 Moore, 102 ; *Baxendale* v. *G. W. R. Co.* 5 C. B. (N. S.) 330). As common carriers must carry all freight offered to them, and can only make a reasonable charge for so doing, it follows that the statute is only an expression of what was the law without the statute. Undoubtedly the legislature has the power to declare what is a reasonable compensation, or to fix the reasonable maximum rates of charges. (*Dow* v. *Beidelman*, 125 U. S. 680). But in the absence of statutory regulation upon the subject, the courts must decide what is reasonable. (*Dow* v. *Beidelman, supra ; Munn* v. *Illinois*, 94 U. S. 113 ; *Chicago, etc. R. R. Co.* v. *Iowa*, 94 id. 155 ; *Budd* v. *New York*, 143 id. 517). This being so, we are unable to see how the statute here deprives the appellant of its property without due process of law. If the legislature has failed to fix a reasonable

rate, then the courts must decide for the railroad companies, when controversies arise, what is a reasonable rate. *(Chicago, etc. R. R. Co.* v. *Iowa, supra)*.

But we held in *C., B. & Q. R. R. Co.* v. *The People,* 77 Ill. 443, that the first section of this Statute should be construed in connection with the eighth; and that the latter section, by providing for the making by the railroad and warehouse commissioners of a schedule of reasonable maximum rates for each of the railroad corporations in the State, furnished a uniform rule for the guidance of the railroad companies. In that case we said: "When that is done, there will be a standard of what is fair and reasonable, and the statute can be conformed to and obeyed. * * * It is true, that the taking of higher rates than those fixed by the commissioners' schedule of rates, is not the exact form of the statutory offense, and the taking of such higher rates might not subject to the penalties of the statute, upon the making of proof that they were fair and reasonable. Still, as we view it, to constitute the offense really designed and intended by the statute, regarding it in its whole scope and purpose, the rates taken must have been in excess of the schedule rates." This construction of the two sections, as related to each other, is not forbidden by the character of the Act as a penal statute. Although penal laws are to be construed strictly, yet "the object in construing penal, as well as other statutes, is to ascertain the legislative intent." *(U. S.* v. *Hartwell,* 6 Wallace, 395). The statutory counts of the declaration in the case at bar contain an averment, that a schedule of rates had been established by the board of commissioners, and that the defendant had received compensation in excess of those rates. It thus avoids the defect, for which the declaration in *C., B. & Q. R. R. Co.* v. *The People, supra,* was condemned.

Upon this branch of the case counsel for appellant rely upon the case of *Louisville & N. R. Co.* v. *R. R. Com'n of Tenn.* 19 Fed. Rep. 679, decided by the Circuit Court of the

United States sitting in Tennessee.    But a comparison of the
statute of Tennessee, which was under consideration in that
case, with the Illinois statute, under which the present suit is
brought, will show that they differ from each other in many
respects.    In *Stone* v. *Farmers' Loan & Trust Co.* 116 U. S.
307, the Supreme Court of the United States passed upon
the validity of the statute of Mississippi, passed in 1884, and
entitled "An Act to provide for the regulation of freight and
passenger rates in this (that) State, and to create a commis-
sion to supervise the same and for other purposes," which is
similar, in many of its essential features, to the Illinois Act of
1873.    It was objected to the Mississippi Act, that it was void
for want of sufficient certainty; and the case of *Louisville &
N. R. R. Co.* v. *R. R. Com'n of Tenn.*, *supra,* was referred to
in support of the objection.    But Chief Justice Waite, in de-
livering the opinion of the Court in the *Stone* case, says of the
Mississippi Statute :    "It is difficult to understand precisely
on what ground we are expected to decide that this statute is
so inconsistent and *uncertain* as to render it absolutely void
on its face.    *    *    *    We find nothing in it to show that the
statute as it now stands is altogether void and inoperative."
(See also *Stone* v. *Y. & M. V. R. R. Co.* 62 Miss. 607).

We are not convinced, that it is our duty to hold said Act of
1873 void for uncertainty in defining the offenses, for the com-
mission of which it imposes the penalties therein mentioned.

*Second,* it is claimed, that the provision, contained in said
section 8, which authorizes the commissioners to fix for each
of the railroads in the State a schedule of reasonable maximum
rates, is unconstitutional as being an attempted delegation of
legislative power.

The constitutional provisions on this subject are as follows :
"And the general assembly shall, from time to time, pass laws
establishing reasonable maximum rates of charges for the
transportation of passengers and freight on the different rail-
roads in this State." (Cons. sec. 12, art. 11; 1 Starr & Cur.

Stat. page 163). "The general assembly shall pass laws to correct abuses and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this State, and enforce such laws by adequate penalties to the extent, if necessary for that purpose, of forfeiture of their property and franchises." (Cons. sec. 15, art. 11; 1 Starr & Cur. Stat. page 164).

The power to regulate and control the charges of railroad companies, or other agencies engaged in public employments, is legislative, and not judicial. Independently of such constitutional provisions as are above quoted, it is now the settled doctrine in this country, that the legislatures of the States have the power to regulate and settle the freight and passenger charges of railroad companies, and the charges for services of other employments which are public in their character, subject only to such restraints as are imposed by charter contracts, and by the authority of Congress to regulate foreign and interstate commerce. (*Munn* v. *Illinois,* 94 U. S. 113; *Chicago, etc. R. R. Co.* v. *Iowa,* id. 155; *Budd* v. *New York,* 143 id. 517).

This doctrine is not here controverted. It is admitted that, if, in the Act of 1873, the legislature had prescribed in definite and specific figures, reasonable maximum rates of charges, the law would have been valid. By an Act, approved April 15, 1871, the legislature of Illinois classified the railroads in the State into four classes, and provided that those in the first class should be limited to $2\frac{1}{2}$ cents per mile, those in the second to three cents per mile, those in the third to four cents per mile, and those in the fourth class to $5\frac{1}{2}$ cents per mile, as compensation for the transportation of any person with a certain amount of ordinary baggage. (Laws of Ill. 1871, page 640). We held this law to be valid. (*Ruggles* v. *The People,* 91 Ill. 256). The Supreme Court of the United States affirmed the decision. (*Ruggles* v. *Illinois,* 108 U. S. 526).

The objection made to the Act of 1873 is, that it is not such an Act as was the Act of 1871, which was repealed on

March 31, 1874. (2 Starr & Cur. Stat. page 2368.) The Act of 1873 is said to be invalid, because, instead of establishing reasonable maximum rates of charges, it is supposed to delegate the power to establish such rates to the railroad and warehouse commissioners. It has been held in a number of cases, that statutes, which create boards of commissioners and authorize them to make schedules of rates for railroad companies, are not invalid for the reason here urged. The doctrine of these cases is, that the functions of such boards are administrative rather than legislative; that the authority conferred upon them relates merely to the execution of the law; that a grant of legislative power to do a certain thing carries with it the power to use all proper and necessary means to accomplish the end, and that, as the reasonableness of rates changes with circumstances and legislatures cannot be continuously in session, the requirement, that the statute itself shall fix the charges, might preclude the legislature from the use of the agencies necessary to perform the duty imposed upon it by the constitution; in short, that the legislature may authorize others to do things which it might properly, but can not conveniently or advantageously, do itself. (*State* v. *Chicago, Mil. & St. P. Ry. Co.* 38 Minn. 281; *Georgia R. R. Co.* v. *Smith et al. R. R. Comrs.* 70 Ga. 694; *Tilley* v. *Sav., Flor. & Wes. R. Co.* 5 Fed. Rep. 641; *Chicago & N. W. Ry. Co.* v. *Dey*, 35 id. 866; *State* v. *F., E. & M. V. R. R. Co.* 22 Neb. 313; *Same* v. *Same*, 23 id. 117; *The People* v. *Harper*, 91 Ill. 357; 8 Am. & Eng. Enc. of Law, page 911).

In *State* v. *Chi., Mil. & St. P. Ry. Co. supra*, the eighth section of the Minnesota statute, which was there held to be constitutional, provided, that the railroad and warehouse commission should have the power, in case the tariffs of rates, fares, charges or classification, filed and published by the railroad companies, should be unreasonable, to change them, and make them reasonable, and compel the carriers to adopt them as thus changed, and, upon refusal, to enforce compli-

ance by mandamus; and said section also declared, that it should be unlawful for any common carrier to charge a higher or lower rate than that fixed and published by the commission. In that case the Supreme Court of Minnesota interpreted the eighth section to mean, that the rates, recommended and published by the commission in the manner required by the act, were not simply advisory, nor merely *prima facie* equal and reasonable, but final and conclusive as to what were lawful or equal and reasonable rates, and that, in proceedings to compel compliance, no issue could be made or inquiry had as to the equality and reasonableness of the rates in fact. It was there conceded by counsel, that the legislature could declare the schedule of rates fixed by the commission to be *prima facie* evidence of what was equal and reasonable, but the court held that the legislature had the power to create a commission whose judgment or determination as to what was reasonable should be final and conclusive. The Minnesota case was taken to the Supreme Court of the United States, and the judgment therein rendered was reversed upon the ground, that the Minnesota statute, as construed by the Supreme Court of that State, conflicted with the constitutional provision forbidding the states to deprive persons of their property without due process of law. (*Chicago, etc. Railway Co.* v. *Minnesota,* 134 U. S. 418). In the latter case, Mr. Justice Blatchford, in delivering the opinion of the Court, said of the statute: "It deprives the company of its right to a judicial investigation, by due process of law, under the forms and with the machinery provided by the wisdom of successive ages for the investigation judicially of the truth of a matter in controversy, and substitutes therefor, as an absolute finality, the action of a railroad commission which, in view of the powers conceded to it by the state court, cannot be regarded as clothed with judicial functions or possessing the machinery of a court of justice." From this decision Justices Bradley, Gray and Lamar dissented, and held, in their dissenting opinion, that

there was no good reason why the legislature might not delegate the duty of regulating and fixing the charges, so as to make them equal and reasonable, to such a board of commissioners as was provided for in the Minnesota statute.

Subsequently, in the case of *Budd* v. *New York,* 143 U. S. 517, the case of *Chicago, etc. Railway Co.* v. *Minnesota, supra,* was reviewed and explained; the doctrine of *Munn* v. *Illinois, supra,* and of the other cases known as the *Granger cases,* in 94 U. S. 155-181, was adhered to; and it was held, that the Minnesota law had been declared invalid, because it had been construed by the Supreme Court of that State, "as providing that the rates of charges for the transportation of property by railroads, recommended and published by the commission, should be final and conclusive as to what were equal and reasonable charges, and that there could be no judicial inquiry as to the reasonableness of such rates."

We understand the doctrine of *Chicago, etc. Railway Co.* v. *Minnesota, supra,* and of *Budd* v. *New York, supra,* to be as follows: The legislature has the power to directly fix the rates of charges. It has the right to declare what is reasonable. When it does so, its declaration is conclusive as to the reasonableness of the rates, and a charge beyond the maximum fixed by it must be regarded as unreasonable. But, where the legislature creates a commission to regulate the rates of charges, such commission has no power to make a schedule of rates, which shall be final and conclusive evidence as to the reasonableness of the charges, because judicial inquiry is thereby cut off.

We do not, however, understand the Federal cases to hold, that an act of a State legislature may not be valid, if, while omitting to itself fix the maximum rates, it creates a commission with authority to make schedules which shall be *prima facie* evidence of the reasonableness of the rates. Where the schedule is only made *prima facie* evidence, the court, in a suit against the carrier, can inquire and determine what is a

reasonable rate; and the defect, which was found to exist in the Minnesota law, is thus obviated. Such is the character of the Illinois Act of 1873, which provides, in section 8, that the schedule made, published and certified by the commissioners, shall, in all suits brought against the railroad corporations involving their freight and passenger charges, etc., be "deemed and taken, in all courts of this State, as *prima facie* evidence, that the rates therein fixed are reasonable maximum rates of charges," etc. One of the criticisms, made upon the construction given by the Supreme Court of Minnesota to the statute in that State, is expressed, in *Chicago, etc. Ry. Co.* v. *Minnesota, supra,* in the following words: "The Supreme Court authoritatively declares that it is the expressed intention of the legislature of Minnesota, by the statute, that the rates recommended and published by the commission, if it proceeds in the manner pointed out by the Act, are not simply advisory, nor merely *prima facie* equal and reasonable." The Mississippi statute, which was held to be a valid law in *Stone* v. *Farmers' Loan & Trust Co. supra,* contained a provision, that the determination of the commissioners should be received in the courts as *prima facie* evidence that such determination was right and proper. So also, the Iowa statute, which was held not to be unconstitutional as a delegation of legislative power in *Chicago & N. W. Ry. Co.* v. *Dey, supra,* provided, that the schedule made by the commissioners should be *prima facie* evidence of the reasonableness of the rates therein charged in all suits brought against the railroad corporations.

Under the constitutional provisions above quoted, the legislature of this State has the right, and it is its prerogative, if it chooses to exercise it, to pass a law establishing or fixing reasonable maximum rates of charges. When it passed the Act of 1873, it did not choose to exercise the power thus conferred upon it. That act does not establish reasonable maximum rates, nor does it delegate to the board of railroad and warehouse commissioners the power to establish such rates.

When a board is authorized to make a schedule of rates, and their schedule is merely given the force and effect of *prima facie* evidence as to the reasonableness of the rates in a suit involving the question of such reasonableness, there is no delegation to the board of the legislative power to establish rates. The legislature thereby merely refrains from the exercise of its constitutional power, and, by leaving the question as to the reasonableness of the rates open, makes room for the exercise by the courts of their jurisdiction upon the subject. The final tribunal of arbitrament is not the judiciary, but the legislature. But "when the legislature declares that the charges shall be reasonable, or, which is the same thing, allows the common law rule to that effect to prevail, and leaves the matter there ; then resort may be had to the courts to inquire judicially whether the charges are reasonable." (116 U. S. page 462).

The decision in *Chicago, etc. Railway Co.* v. *Minnesota, supra,* does not base the invalidity of the Minnesota statute upon the ground that the provision, making the schedule of the commission final and conclusive as to the reasonableness of the rates, was a delegation of legislative power to the commission. Nor do we deem it necessary to decide whether such a provision would amount to a delegation of legislative power or not. But if it be conceded, that making the schedule of the commission final and conclusive as to the rates is a delegation of legislative power, it is sufficient to say in the present case, that the act of 1873 does not give to the schedule any such final and conclusive effect. We are, therefore, of the opinion that the Act is not unconstitutional for the second reason urged upon our attention by counsel.

*Third,* it is argued that the provision of the statute making the schedule of the commissioners *prima facie* evidence, that the rates therein fixed are reasonable maximum rates of charges, is unconstitutional and void, not only as depriving the carriers of their property without due process of law, but

as infringing upon the right of trial by jury. We do not think that this objection should be sustained. In the first place, the act does not deprive the railroad corporations of the right to have a judicial determination of the reasonableness of the rates, if they are not satisfied with the schedule made by the commission. The courts are open to them for a review of the acts of the commissioners in fixing the rates of charges. In the next place, the provision is an exercise by the legislature of its undoubted power to prescribe the rules of evidence. (2 Rice on Evidence, pages 806, 807; *Commonwealth* v. *Williams*, 6 Gray, 1; *State* v. *Hurley*, 54 Me. 562). Such provisions are not unusual. Cases have arisen in this State under a statute, making the fact of injury, caused by sparks from a locomotive passing along the road, *prima facie* evidence of negligence, and no question has ever been raised as to the validity of the statute. (*P., C. & St. L. Ry. Co.* v. *Campbell,* 86 Ill. 443; *St. L., V. & T. H. R. R. Co.* v. *Funk,* 85 id. 460; *T., W. & W. R. W. Co.* v. *Larmon,* 67 id. 68; *Rockford, R. I. & St. L. R. R.* v. *Rogers,* 62 id. 346; *C. & A. R. R. Co.* v. *Clampit,* 63 id. 95; *C. & A. R. R. Co.* v. *Quaintance,* 58 id. 389). Acts. making tax deeds *prima facie* evidence of the regularity of proceedings antecedent to the deed have been held to be valid. (2 Rice on Ev. page 607; *Hand* v. *Ballou,* 12 N. Y. 541; *Delaplaine* v. *Cook,* 7 Wis. 54; *Allen* v. *Armstrong,* 16 Iowa, 508; *Wright* v. *Dunham,* 13 Mich. 414; *Gage* v. *Caraher,* 125 Ill. 451). See also *Williams* v. *German Mut. Fire Ins. Co.* 68 Ill. 387. Cases referred to by counsel, which involve the validity of acts providing for references to auditors or referees, and making the finding of the facts by them in their reports *prima facie* evidence of facts in trials before juries, will be found to be clearly distinguishable from the case at bar. The Supreme Court of Iowa has decided, that a provision, making the schedule of the commission *prima facie* evidence of the reasonableness of the rates of charges, as contained in a statute of that State similar to said Act of

1873, was not obnoxious to the objections here urged against it, saying: "The provision of the statute, that the rates fixed by the commissioners shall be regarded as *prima facie* reasonable, is not of an unusual character, and was enacted in the exercise of the undoubted power of the State to prescribe rules of evidence in all proceedings under the laws of the State. The law presumes the acts of officers of the State to be rightly done, and gives them faith accordingly. This rule is not unlike the provision of the statute complained of by the plaintiff." (*B., C. R. & N. Ry. Co.* v. *Dey*, 82 Iowa, 312). See also *C. & A. R. R. Co.* v. *The People*, 67 Ill. 11.

*Fourth,* it is contended that the statute has been held to be unconstitutional as to inter-state shipments, and that, therefore, it is void as a whole.

This contention is based upon the decisions of this Court in *The People* v. *W., St. L. & P. Ry. Co.* 104 Ill. 476, and *W., St. L. & P. Ry. Co.* v. *The People*, 105 id. 236, and of the Supreme Court of the United States in *Wabash, etc. Railway Co.* v. *Illinois*, 118 U. S. 557. In the Illinois cases, the action was to recover for unjust discrimination in carrying the same class of freight from Peoria to New York City for a less sum of money than similar freight was carried from Gilman to New York City, Peoria being a greater distance from New York than Gilman, and being 86 miles further west in Illinois upon the defendant company's road from a station near the eastern boundary of Illinois than Gilman. The judgments in the Illinois cases were reversed by the U. S. Supreme Court in the *Wabash Ry. Co.* case, *supra*, because of the interpretation placed by this Court upon those sections of the Act of 1873 which relate to unjust discrimination; and not because the U. S. Supreme Court considered the Act of 1873 invalid as amounting to an attempted regulation of commerce. The latter Court, in the *Wabash Ry.* case, *supra*, said: "It might admit of question whether the statute of Illinois, now under consideration, was designed by its framers to affect any other

class of transportation than that which begins and ends with-in the limits of the State." The question, whether the Illinois statute was or was not so designed by its framers, was not as carefully considered in the above cases as it would have been, had it not been for the construction therein placed upon the previous decisions of the Federal Supreme Court. The latter decisions were then understood as holding, that a state law, prohibiting unjust discrimination in the rates of charges for the transportation of property between points wholly within the State, whether it was a part of a continuous carriage to a point out of the State or not, was not invalid, in the absence of Congressional action upon the subject, and when construed as the act of 1873 was construed in the Illinois cases. With such understanding of the Federal rulings, this Court held that, while the provisions of the Act of 1873 relating to unjust discrimination were inoperative upon that part of the contract of shipment which had reference to the transportation outside of the State, they were binding and effectual as to so much of the transportation as was within the limits of the State. In the opinion of the majority of the Court, (Chief Justice Waite and Justices Bradley and Gray dissenting), in *Wabash Rail-way Co.* v. *Illinois, supra,* Mr. Justice Miller said: "It cannot be denied, that the general language of the Court in these cases, upon the power of Congress to regulate commerce, may be susceptible of the meaning which the Illinois Court places upon it." In the same opinion the same learned Justice, in speaking for the majority, while stating that they were bound by the construction given by this Court to the Illinois statute, and that this Court had so construed the statute as to make it apply to commerce among the States, also said: "If the Illinois statute could be construed to apply exclusively to contracts for a carriage which begins and ends within the State, disconnected from a continuous transportation through or into other States, there does not seem to be any difficulty in holding it to be valid." Looking, however, at the provi-

25—149 Ill.

sions of the Act of 1873 which have reference to unjust discrimination, in the light of the construction given to them in the Illinois cases above referred to, the Federal Supreme Court held those provisions invalid, as applied to unjust discrimination in the rates of charges for the transportation of property within the State when such transportation was part of a continuous carriage from a point within to a point without the State, upon the ground that such construction made the provisions conflict with the constitutional grant to Congress of power to regulate inter-state commerce.

This Court might be inclined to consider the question whether the construction, announced in said cases and accepted by the U. S. Supreme Court, may not have been incorrect and unauthorized by the language of the Act, if the present suit had arisen under those sections of the Act, which have reference to unjust discrimination. But the case at bar arises under the provisions which prohibit the charge of more than fair and reasonable rates. This action is brought for damages growing out of alleged charges of unreasonable rates for the transportation of property between points lying wholly within the State, and not being part of a continuous transportation to any point outside of the State. It is within the power of the legislature to so amend the Act, as clearly to limit the provisions concerning unjust discrimination to commerce carried on within the State.

Counsel claim, that the provisions relating to inter-state commerce are so intimately connected with those relating to commerce carried on wholly within the limits of the State, as not to be separable, the one from the other; and that, as the Act has been declared invalid when applied to inter-state commerce, it must also be considered invalid as applied to State commerce. Upon this point reference is made to cases holding, that words of limitation cannot be introduced into a penal Statute, so as to make it specific, when, as expressed, it is general only. (*U. S.* v. *Reese,* 92 U. S. 214; *Trade Mark*

*Cases*, 100 id. 82; *Baldwin* v. *Franks*, 120 id. 678). If the doctrine of these cases is applicable to the case at bar, it is only applicable to the sections of the Act of 1873 relating to unjust discrimination; and the effect of its application would be to hold those sections void, as affecting transportation within the State, because they had been held void as affecting inter-state transportation; but the effect would not be to invalidate the Act, so far as it relates to charges of fair and reasonable rates alone.

Where a part of a statute is unconstitutional, the remainder will not be declared to be unconstitutional also, if the two are distinct and separable, so that the latter may stand, though the former becomes of no effect. The constitutional and unconstitutional provisions may sometimes be contained in the same section, but do not necessarily fall together, unless they "are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. * * * If a statute attempts to accomplish two or more objects and is void as to one, it may still be in every respect complete and valid as to the other. * * * A legislative Act may be entirely valid as to some classes of cases, and clearly void as to others." (Cooley on Cons. Lim.—6 ed.— pages 211 and 213; *Dupee* v. *Swigert*, 127 Ill. 494).

An examination of the Act of 1873, in the light of these principles of construction, will show that parts of the Act relate to the prevention of unjust discrimination between persons and places in the rates of charges for transportation, while other parts relate to the prevention of charges that exceed fair and reasonable rates. Sections 2 and 3 of the Act relate more particularly to unjust discrimination, and their aim is "against favoritism—against charging one shipper more than another for the like service, under like conditions."

(*I., D. & S. R. R. Co.* v. *Ervin*, 118 Ill. 250 ; *I. C. R. R. Co.* v. *The People*, 121 id. 304). Section 1, in connection with sections 7 and 8, concerns the question, whether the rate charged a passenger or shipper is reasonable or not, irrespective of the charge that may be made against another passenger or shipper, or at another point. It is easy to see, that there is a difference between extortion and discrimination. Hence, we think that the provisions of the Act upon the two subjects can be separated and disconnected from each other, so that those portions relating to reasonable charges may stand, even if those portions relating to unjust discrimination fall. Whether the latter do or must fall or not, we do not decide. It is to be noted, however, that, in *I., D. & S. R. R. Co.* v. *Ervin, supra,* and *I. C. R. R. Co.* v. *The People, supra,* this Court treated the whole of the Act of 1873 as valid, as applied to commerce wholly within the State.

The *Wabash Railway* cases, 104 Ill. 476 and 105 id. 236, arose under the sections relating to unjust discrimination, and it was those sections, which were therein construed as being "broad enough to include unjust discrimination in the rates of charges for the transportation of property from a point within to a point without the State." The provisions of the Act, relating to fair and reasonable rates, were not construed as being broad enough to prohibit charges of more than reasonable rates for transportation outside of the State, or within it as part of a carriage beyond the State. Therefore, the question, whether these provisions were intended to apply only to transportation between points lying wholly within the State, and disconnected from a continuous carriage to a point outside of the State, is not a question which is settled by the decisions in the *Wabash Ry.* Cases. After a careful study of the terms of the Act, we are of the opinion that the first section, read in connection with the title and sections 7, 8 and 11, applies only to charges of reasonable rates for such transportation within the State as is not a part of a continuous trans-

portation without the State, and, therefore, does not infringe upon the power of Congress to regulate inter-state commerce.

The title of the Act is "An Act to prevent extortion ⁂ ⁂ ⁂ in the rates charged for the transportation of passengers and freights on railroads *in this State*," and not on railroads outside of this State. The railroad corporations forbidden by section 1 to charge more than reasonable rates are thus therein described : ·"any railroad corporation organized or doing business *in this State* under any Act of incorporation, or general law of this State, now in force or which may hereafter be enacted, or any railroad corporation organized, or which may hereafter be organized under the laws of any other State, and doing business *in this State*." Section 11 provides, that the term, "railroad corporation," contained in the Act, shall be taken to mean all corporations, etc., now or hereafter owning or operating "any railroad, in whole or in part, *in this State*," and to apply to all persons, whether incorporated or not, "that shall do business as common carriers upon any of the lines of railways *in this State*," etc. Section 1 forbids the charging of more than a reasonable rate for the transportation of passengers or freight or cars "upon any railroad *within this State*."

Section 8 directs the railroad and warehouse commissioners to make "for each of the railroad corporations doing business *in this State*," a schedule of reasonable maximum rates of charges for the transportation of passengers and freight and cars "*on each of said railroads*." It is quite manifest, that the schedule thus required to be made is of more importance in determining what are reasonable rates of charges than in determining whether there has been unjust discrimination. In section 3 the discriminating rates, charges, etc., therein referred to, are made *prima facie* evidence of unjust discrimination without mention of the schedule. If the greater distance from Peoria to New York and the shorter distance from Gilman to New York are given, and the fact is ascertained that the charge for transportation over such greater

distance is less than the charge therefor over such shorter
distance, a discrimination is at once established, whether the
whole of the distances be regarded, or the proportional parts
thereof in this State.  Given the facts of the distances, whether
without or within the State, and of the actual charges, and
the question of discrimination is determined, though reference
to the schedule may be made as to the injustice of the dis-
crimination to the individual.  But it could not have been the
intention of the legislature, that this schedule should be *prima
facie* evidence of what were reasonable maximum rates of
charges for transportation outside of the State, or for such
transportation within it as might be part of a continuous
transportation from within to without.  Other states would
have their own laws, and commissioners, and methods of as-
certaining rates.  The railroad and warehouse commissioners
named in schedule 8 are Illinois officials, appointed by the
Governor, with jurisdiction limited to this State, and without
power or opportunity to gather the data for fixing reasonable
rates of transportation outside of the State, or within the
State as connected with a continuous carriage to a point be-
yond its limits.  The Act establishing the Board of railroad
and warehouse commissioners, provides, that only railroads
incorporated or doing business in this State shall make sworn
statements of their affairs to said commissioners.  (2 Starr &
Cur. Stat. pages 1956-1958).  Section 7 of the Act of 1873
requires the commissioners to ascertain, whether the provi-
sions of the Act have been violated by "any railroad corpora-
tion *in this State,*" and for that purpose "to visit the various
stations upon the line of each railroad."  We construe these
features of the Act to indicate that, so far as the provisions
relating to the charges of reasonable rates are concerned, it
was not the intention of the legislature to make them apply
to any other kind of transportation than that which should
occur wholly within the boundaries of this State, or to any
other kind of contracts than those for a carriage which begins

and ends within the State, disconnected from a continuous transportation through or into other States. Consequently, we hold the provisions relating to charges of reasonable rates to be valid.

*Fifth*, the statute, granting power to the railroad commissioners to make a schedule of reasonable maximum rates for appellant, is alleged to be a violation of appellant's charter, so as to impair the obligation of its contract with the State; and, therefore, the Act is said to be void as to appellant.

This point is settled adversely to appellant by the cases of *Ruggles* v. *The People*, 91 Ill. 256, and *Ruggles* v. *Illinois*, 108 U. S. 526. In the former case, one of the questions submitted by the stipulation was, whether a law, establishing a reasonable maximum rate of charges for the transportation of passengers on railroads in this State, was such a constitutional law, as appellant "was bound to obey, * * * notwithstanding the provisions of its charter;" and it was there held, that the law was valid, and that the legislature has the power to fix a maximum rate of charges for corporations exercising a business public in its character; and that such regulation does not impair the obligation of the contract in their charters. In *Ruggles* v. *Illinois*, *supra*, the provisions of appellant's charter are fully set out.

It is not denied, that, by consolidation and statutory provisions, appellant acquired the powers and franchises granted to the Central Military Tract Company by an Act to incorporate the latter Company, passed on February 15, 1851, and by an Act to amend said Act, passed on June 19, 1852. By section 3 of said Act of 1851, said Company was thereby "created and incorporated for the purpose of organizing under an act entitled 'An Act to provide for a general system of railroad incorporations,' in force November 5, 1849," and was "entitled to have and exercise the powers and privileges and be subject to the liabilities therein enumerated." The general law of 1849, in clause 10 of section 21 thereof, conferred

upon railroad companies organized thereunder the right "to· regulate the time and manner in which passengers and property shall be transported, and the tolls and compensation to be paid therefor; but such compensation for any passenger and his ordinary baggage shall not exceed three cents a mile, unless by special act of the legislature, and shall be subject to alteration as hereinafter provided." It also provides in section 32 that "the legislature may, when any such railroad shall be opened for use, from time to time, alter or reduce the rates of toll, fare, freight, or other profits upon such roads; but the same shall not, without the consent of the corporation, be so reduced as to produce, with said profits, less than fifteen per cent per annum on the capital actually paid in, nor unless, on an examination of the amounts received and expended, to be made by the Secretary of State, he shall ascertain that the net income derived by the company from all sources for the year then last past, shall have exceeded an annual income of fifteen per cent upon the capital of the corporation actually paid in."

Section 6 of the act of 1852 is as follows: "The said company shall have power to make, ordain and establish all such by-laws, rules and regulations as may be deemed expedient and necessary to fulfill the purposes and carry into effect the provisions of this act, and for the well ordering, regulating and securing the affairs, business and interest of the company: *Provided*, that the same be not repugnant to the constitution and laws of the United States or of this State, or repugnant to this act. · The board of directors shall have power to establish such rates of toll for the conveyance of persons or property upon the same, as they shall, from time to time, by their by-laws, determine, and to levy and collect the same for the use of the said company. The transportation of persons and property, the width of track, and all other matters and things respecting the use of said road, shall be

in conformity to such rules and regulations as the said board of directors shall from time to time determine."

It is now claimed by the appellant, that it still has the right, under its original charter of 1851, of fixing rates subject only to a limit of three cents a mile on passengers, and that the State has no power to interfere except to keep the annual profits down to 15 per cent per annum on the paid up capital; and that the Act of 1873, giving the commissioners power to make a schedule of maximum reasonable rates for appellant, ignores these limitations upon the power of the State to regulate its charges. Although the Act of 1852 is entitled An Act to amend the charter of 1851, it is a complete charter in itself. It contains provisions not found in the general railroad law of 1849. The plea alleges that it was accepted by appellant, and it was evidently intended and accepted as a substitute for the charter of 1851.

In *Ruggles* v. *Illinois, supra,* it was contended by appellant, that the Act of 1852 repealed sections 21 and 32 of the old charter, with the limitations therein contained as above set forth, and that, under section 6 of the amending Act of 1852 as above set forth, appellant could establish its own rates of fare and freight free from legislative interference. In that case, the Supreme Court of the United States declined to decide whether section 6 of the amending Act repealed clause 10 of section 21 and section 32 of the original charter, or not; but they held that, under said section 6, no by-law could be established by the directors that did not conform to the laws of the State, whether such laws were in force when the amended charter was granted, or came into operation afterwards; that the power of the company for the regulation of its own affairs was in express terms subjected to the legislative control of the State; that the by-laws fixed the rates, and no by-law could be made that was at all repugnant to the laws of the State; that only such charges could be collected by ap-

pellant as were allowed by the laws of the State; that, in the absence of legislation, the power of the directors over the rates is subject only to the common law limitation of reasonableness, but that the State may establish a maximum of rates to be charged by railroad companies for the transportation of persons and property; that, when a maximum is so established, the rates fixed by the directors must conform to its requirements, otherwise the by-laws would be repugnant to the laws.   Adopting the views thus expressed by the Federal Supreme Court, we are of the opinion, that there is nothing in appellant's charter, which relieves it from the obligation to submit to the provisions of the Act of 1873 upon the subject of reasonable rates, and that the Act does not impair the obligation of any contract alleged to be contained in appellant's charter.

*Sixth*, it is claimed that the schedule of 1873, which was admitted in evidence, was not published as required by statute, and that, for that reason, it did not go into effect.

The copy of the schedule of September 1, 1873, introduced by the plaintiff, was accompanied by the following certificate which was attached to it:

"OFFICE OF RAILROAD AND WAREHOUSE COMMISSION,
SPRINGFIELD, ILLINOIS.

"STATE OF ILLINOIS,   }
    *Sangamon County.* }  ss.

"We, the undersigned, Railroad and Warehouse Commissioners in and for the State of Illinois, do hereby certify that the foregoing is a true copy of 'a schedule of reasonable maximum rates of charges for the transportation of passengers and freight and cars,' together with a classification of freight, explanatory and forming a part of said schedule, revised and prepared by the Railroad and Warehouse Commission for the Chicago, Burlington and Quincy Company'; that said 'classification of freight' and schedule has been published, as required by law, in the *Illinois State Journal*, a weekly newspaper published in the city of Springfield, in said State, in the issues

of said paper dated, respectively, September 3d, 10th, 17th and 24th, and October 1, A. D. 1873, as revised, and was in force from and after September 1, A. D. 1873, and remained in force until December 1, A. D. 1881.

"Witness our hands this 7th day of February, A. D. 1891.

John R. Wheeler,

Isaac N. Phillips,

W. R. Crim,

*Railroad and Warehouse Commissioners.*

Attest: J. H. Paddock, *Secretary.*"

This certificate shows, that publication of both the classification and the schedule was made not only for three successive weeks, but for five successive weeks, and that, consequently, the provision in section 8 as to publication was fully complied with. The trial court was authorized to admit it, and when admitted, it was "*prima facie* evidence of the schedules of said commissioners." At the close of plaintiff's evidence, defendant introduced another certificate of the commissioners, dated December 1, 1891, and other evidence, for the purpose of showing that the classification of freights, which recited on its face that it formed a part of each schedule, was published on September 3, 10 and 17, and that the schedule for appellant, which refers to the classification as forming a part of it, was published on September 17 and 24 and on October 1. The classification was published three successive weeks, and the schedule was published three successive weeks; but the point is made that, as the schedule referred to the classification, the latter was a part of the former, and that, when the schedule was published on September 17, 24 and October 1, the classification should have been published as a part of it, and in the same issues of the newspaper with it. As the classification was for all the railroads and a schedule was made for each, it is a question whether it was necessary to republish the classification with each schedule, it having already been published for the time required by law. The classifica-

tion was on file in the office of the commissioners, and the schedules referred to it, and the roads could have access to it.

The certificate, however, as above set forth, was merely *prima facie* evidence, that the schedule introduced was that of the commissioners. Other evidence might be introduced to show that it was their schedule. This evidence was furnished by the defendant itself. Its own proof showed, that the copy introduced was a copy of the schedule, prepared and adopted for it by the commissioners. It is not contended, that the defendant did not have notice of the schedule of September, 1873, irrespective of any publication of it.

But, even if it be true, that the schedule could not go into effect until it was published in the manner required by the law, and that the separate publication of the classification and the schedule was not a compliance with section 8, we still think, that the certificate above set forth was sufficient. The case below was not tried until November 30, 1891. By Act approved June 30, 1885, the legislature amended said section 8, and, in the amended section, provided as follows: "All such schedules *heretofore* or hereafter made shall be received and held in all such suits as *prima facie* the schedules of said commissioners without further proof than the production of the schedule desired to be used as evidence; with a certificate of the railroad and warehouse commissioners, that the same is a true copy of a schedule prepared by them for the railroad company or corporation therein named." (3 Starr & Cur. Ann. Stat. page 1029). The certificate of February 7, 1891, conforms to the requirement of section 8 as thus amended.

No man or corporation has a vested right in the rules of evidence. They pertain to the remedies provided by the State for its citizens, and do not constitute a part of any contract. They are subject to control and modification by the legislature, whether affecting proof of existing rights, or rights subsequently acquired. Changes in them may be made applicable

to existing causes of action. (Cooley on Cons. Lim.—6 ed.—page 451; *Gage* v. *Caraher,* 125 Ill. 447).

*Seventh,* appellee assigns as a cross-error the overruling of his demurrer to the sixth plea of the defendant. This plea was to the last additional count of the amended declaration, and averred that the causes of action therein set out did not accrue to the plaintiff within five years next before the filing, or the obtaining of leave to file, said last additional count, or the substitute therefor. The question is, whether the amendment, or the last count of the amended declaration, sets up a new cause of action. If it does, the demurrer to the plea was properly overruled; if it does not, the amendment takes effect from the commencement of the suit. Where an amendment sets up no new matter or claim, but merely restates, in a different form, the cause of action set out in the original declaration, it relates to the commencement of the suit, and the statute of limitations is arrested at that point; but where the amendment introduces a new or different cause of action, it is treated as a fresh suit, begun at the time when such amendment is filed, and the statute is arrested at the latter date. (*Baker* v. *Mo. Pac. Ry. Co.* 34 Mo. App. 98.)

In this case, the two counts of the original declaration, and all the additional counts of the amended declaration except the last, sought to recover the treble damages, allowed by the statute for a violation of its provisions; and to these counts the two years' statute of limitations was properly pleaded, as, in this State, actions for a statutory penalty must be brought within two years next after the cause of action accrued. The last amended count, filed more than seven years after the filing of the original declaration, sought to recover damages for the violation of defendant's common law liability as a carrier for charging more than reasonable rates. To this count the five years' statute of limitation was applicable. It is conceded by appellee, that he cannot recover treble damages for unreasonable charges, except for those paid by him during

the two years prior to the beginning of the suit, and that the object of the amended count is to recover single damages for the three years immediately preceding the two years for which treble damages are claimed.

We think, that the amended count introduced a new cause of action. The original declaration declares specially on the statute for the recovery of a statutory penalty; alleges, as the ground of action, the charge of rates in excess of those fixed by the schedule of the commissioners, and concludes: "Whereby and by force of the statute * * * an action hath accrued * * * to demand and recover of the defendant three times the amount of said sum of money, etc., with reasonable attorneys' fees in a sum to be fixed by the court." The amended count is based on an alleged common law liability, or on an implied contract to repay money obtained by wrongful overcharges. Before it was filed, the cause of action set forth in it had been barred by the five years' statute of limitations. If a new suit had been begun for the same cause of action at the time of the amendment, it could not have been maintained; and there is no more reason why the cause of action should be enforced when embodied in an amended declaration than when forming the subject matter of a new suit. Although an amendment may properly be allowed, it does not necessarily, when allowed, have the effect of relating back to the date of bringing the suit, for the purpose of determining questions of limitation. An amendment, which introduces a cause of action barred by limitation, is ineffectual to avoid the statutory bar. (*Gibbons* v. *Steamboat*, 40 Mo. 253; *Baker* v. *The Mo. Pac. Ry. Co. supra; Gorman* v. *Judge, etc.* 27 Mich. 138; *Melvin* v. *Smith*, 12 N. H. 462; *I. & St. L. R. R. & C. Co.* v. *People*, 19 Brad. 141).

Where the original declaration sets up over-charges upon certain shipments, and the amended declaration sets up over-charges on other and different shipments, the causes of action are not the same. (*I. C. R. R. Co.* v. *Cobb, Christy & Co.* 64

Ill. 140; *Phelps* v. *I. C. R. R. Co.* 94 id. 548; *North Chicago Rolling Mill* v. *Monka,* 107 id. 340). Here, the original declaration seeks to recover penalties for overcharges on shipments made subsequent to November 2, 1880, while the last additional count of the amended declaration declares for damages on account of overcharges on shipments made prior to October 17, 1880.

We are of the opinion that there was no error in overruling the demurrer to the sixth plea.

One or two other minor objections are urged, but, after a careful consideration of them, we are satisfied that they are not well taken. The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*